## J. D. HELMS v. C. E. HOLTON.

(Filed 11 May, 1910.)

1. Pleadings—Motion for Judgment—Facts Admitted—Effect.

A motion by plaintiff for judgment upon the pleadings is in effect a demurrer to the answer, and admits the truth of the facts therein alleged, except only as to their legal sufficiency.

2. Contracts—Fraud—False Representations—Sureties — Consideration of Release—Damages—Causal Connection.

Plaintiff and defendant agreed to organize a corporation and take certain proportions of the capital stock. In pursuance of their plans, large sums of money were borrowed on the corporation's note with their indorsements. The defendant fulfilled his agreement to take the stock, and called upon plaintiff to fulfill his part, but by the false and fraudulent representations of the plaintiff that he was utterly insolvent and unable to do so, the defendant was induced to solely assume the corporation's liability and take over the property, in which transaction the notes in controversy were given by him to the plaintiff. The corporation was rendered insolvent by plaintiff's failure to take the stock he had agreed to take. The defendant acknowledged the execution of the notes, but sets up the fraudulent matters, as stated, as a defense and a counterclaim for damages.: *Held,* (1) the gain and loss by the plaintiff and defendant respectively, in the fraudulent transaction, whereby the former procured the notes sued on, is a sufficient causal connection between the false representations and the damages sought by way of counterclaim; (2) the joint and several liability on the corporation's notes was not available to plaintiff in justification of his false representations in avoiding equal responsibility; (3) the false representations constituted actionable fraud.

3. Contracts—Fraud—False Representations—Financial Responsibility—Equality.

>  When a party to a contract has induced the other party, by false and fraudulent representations as to his own financial condition, to assume all liability under the contract, the other party will not be presumed to deal upon equal footing, for the party making the representations will be presumed to know his own financial condition.

4. Same—Measure of Damages.

>  In this case, as the defendant cannot rescind the contract and restore the *status quo* existent at the time of the false representations, the courts hold the measure of damages to be the difference between the value of the assets of the corporation, with full performance of his part by the plaintiff, and the value thereof with plaintiff's obligations unperformed.

APPEAL from *Ward, J.,* at January Term, 1910, of GUILFORD.

Judgment was rendered for the plaintiff upon the pleadings. Defendant excepted and appealed to this Court. The plaintiff sued to recover $6,000, evidenced by three notes, for $1,000, $2,-000 and $3,000, each dated 1 October, 1902, and interest from 1 October, 1904. Defendant admitted execution of the several notes and that he had paid no part of the principal and no interest since 1 October, 1904.

The defendant alleged matters in defense and as a counterclaim, which may be thus summarized:

He alleged that, in July, 1901, plaintiff and himself agreed to embark in the wholesale drug business in Greensboro, and to that end they agreed to organize a corporation to be known as the Holton-Helms Drug Company; that plaintiff stated that he was able to, and would, take stock therein to the amount of $10,000 in cash, and appellant being then engaged in the retail drug business in Greensboro, also agreed to take $10,000 of stock in said company, putting in said retail drug business at its inventory value, and agreeing to make up any deficiency in his said subscription, in cash; that said corporation was accordingly organized with an authorized capital stock of $100,000, and a subscribed capital stock of $25,000, consisting of the two subscriptions above mentioned and a subscription of $5,000 by another person. That said corporation in supposed furtherance of the said business venture, leased from W. D. McAdoo a lot in Greensboro, next to the McAdoo Hotel, and undertook to erect a building thereon, part of which was to be used for the business of said corporation and part for hotel purposes; that in order to carry out this building scheme, said corporation agreed to take over and did take over from the lessee of said McAdoo Hotel, the unexpired portion of the lease upon said

hotel, then having several years to run, in order to avoid complications arising from the interference with said lessee's rights to light and air, likely to be caused by the erection of said new building adjacent to said hotel. The first of these leases was executed by the Holton-Helms Drug Company, and by W. D. McAdoo, and the second by the same parties and C. E. Holton and J. D. Helms, individually; that plaintiff and defendant agreed, in order to raise the money to erect said building, that said corporation should borrow the necessary funds from certain banks, upon its note, indorsed by both plaintiff and defendant, and they agreed to defer calling for the payment of said subscriptions to said capital stock until after the completion of said building, and this was accordingly done; that said J. D. Helms had then in his hands as guardian the sum of $6,000, and this sum he agreed to loan and did loan to said corporation upon its note payable to him as guardian, and indorsed by both J. D. Helms and C. E. Holton, "and in this way the funds represented by the notes sued on were first evidenced." That upon the completion of said building, appellant requested of respondent that he pay his said subscription of $10,000, but respondent delayed doing so, and finally stated to appellant that he, respondent, "was utterly without assets of his own of any kind, and was utterly unable to pay his said subscription of $10,000 to the capital stock of said corporation, or any other sum, stating at the time that all the assets he possessed of every kind and nature, even including his policies of life insurance, had been theretofore encumbered by mortgage to their full value." That at that time the indebtedness of the corporation was $27,699.51, incurred almost wholly on the indorsements of the plaintiff and defendant. That believing these statements to be true, and in reliance upon them, with the consent and at the suggestion of plaintiff, the defendant took the property of the corporation, assumed all its indebtedness (including that due plaintiff as guardian), and has paid the same or by executing new notes has relieved the plaintiff from liability to the holders; that new notes were executed to plaintiff; that the statements made by plaintiff were false and fraudulent; that they were cunningly devised to deceive and defraud defendant, and a trick and device conceived by plaintiff to escape his equal liability upon the notes, and his payment of his stock subscription; that the corporation was thereby rendered insolvent; and that defendant, relying upon these false and fraudulent statements, was induced to, and did, pay out large sums of money; that the falsity of plaintiff's statements and the fraud imposed upon defendant by plaintiff was not discovered until the fall of 1904, when defendant declined to pay the notes sued upon, then held by plaintiff.

HELMS *v.* HOLTON.

*Stedman & Cooke* and *R. C. Strudwick* for plaintiff.
*W. P. Bynum* and *King & Kimball* for defendant.

MANNING, J.   This appeal coming to us from a judgment granted to the plaintiff upon the pleadings, we must, of course, assume that his Honor held that the facts set up in the answer did not constitute, in law or equity, a defense to the notes or a counterclaim or set-off available to the defendant.   The motion of the plaintiff for judgment upon the pleadings was, in effect, a demurrer to the answer, and, being such, admitted the truth of the facts alleged in the answer, and denied only their legal sufficiency.   Considering the facts alleged in the answer to be true, we think they amount to an actionable fraud, resulting directly in such damages to the defendant as are capable of admeasurement under accepted and established rules.   The chief contention relied upon by plaintiff is that there is "no legal causal connection between the alleged false representations and the alleged damages."   The defendant alleges that, by reason of the false representations, believed by him and relied upon by him, he was induced to relieve the plaintiff of his liability on notes aggregating several thousand dollars, and himself alone to assume the payment of these notes.   The plaintiff and defendant occupied to these notes the relation of co-sureties or coindorsers for an insolvent corporation, in which plaintiff and defendant owned equal interests.   The plaintiff never paid a dollar of his subscription, while the defendant had performed, in every particular, his obligation.   By his misrepresentations the plaintiff has avoided the payment of his stock subscription and the payment of his one-half of the balance on the notes unpaid by the corporation, and has cast upon the defendant the entire burden of liability jointly incurred by the plaintiff and defendant.

The advantage which the plaintiff sought is apparent; and the disadvantage and loss to the defendant must be equally clear, for what the plaintiff escaped by his false representations has fallen upon the defendant.

It is alleged that the insolvency of the corporation was well known to the plaintiff; the enterprise jointly undertaken by plaintiff and defendant had failed, and in order to escape a liability then fixed, and which plaintiff would be called upon to meet equally with defendant, the plaintiff, it is alleged, resorted to the device of falsely pleading his own insolvency, and in the presence of the common disaster appealed to the defendant to save himself as best he could.

It is no answer to the false statements to say that as defend-

ant was bound on the notes, and, under our statute, his liability was both joint and several, he might eventually have been forced to pay the full amounts; this eventuality did not justify the plaintiff in resorting to a falsehood to avoid his equal responsibility. *Wilbur v. Prior* (Vt.), 32 Al. Rep., 474. Were the false representations of plaintiff of such character as to constitute actionable fraud? In *Richards v. Hunt,* 6 Vt., 251, 27 Am. Dec., 545, the facts were that plaintiffs, as creditors, had been induced, by the debtor's false representations of insolvency and poverty, to compromise their claim and to discharge the defendant from their debt, and the Court said: "That the defendant intended his representations should be relied upon is evident from the circumstances under which, and the purpose for which, they were made. That they were relied upon by the orators is equally evident, from their conduct in accepting so small a portion in lieu of their whole debt. And that they were injured is equally apparent, from the obvious ability of the respondent to pay the whole debt, which is disclosed by the case. There is in this case no ground for supposing the respondent ignorant of his own affairs. He must, therefore, be held to strict truth in his representations. Were these representations true? The tenor of them is that the respondent was poor and destitute, that he had no resource for the maintenance of a numerous family but his personal labor; that he had not the means of paying the debt; and that, if payment was insisted on, he should be driven to take advantage of the poor debtor's oath. Now, the reverse of all this was true. The case falls, then, within the ordinary rules for equitable relief in other cases. Is there any reason why these rules should not be applied? If equity requires good faith in all business transactions, why not in this? Can any reason be given why an appeal to the humanity and charitable feelings of a creditor should not be conducted with truth and honesty? Or shall we deny to the party defrauded of his property, through the medium of his benevolent and honorable feelings, the relief which we should afford to him if overreached in the competitions of avarice?" *Reynolds v. French,* 8 Vt., 85; 30 Am. Dec., 456; *Phettiplace v. Sales,* 4 Mason, 312; *Irving v. Humphrey,* 1 Hopk., 284.

In *May v. Loomis,* 140 N. C., 350, *Mr. Justice Hoke,* in commenting upon the facts presented in that case, said, and we now quote it as applicable to the present case: "Accepting the testimony favoring defendant's claim as true, and we are required so to accept it, where a nonsuit is directed against the party who offers it, the facts disclose a clear case of deliberate fraud

HELMS *v.* HOLTON.

in which there appears every element of an actionable wrong—false representations as to material facts, knowingly and willfully made as an inducement to the contract, and by which the same was effected, reasonably relied upon by the other party, and causing pecuniary damage."

It is further contended by the plaintiff that "the parties stood on equal footing, the means of correct information were equally open to both, no artifice to conceal the true state of facts is alleged."

We may assume as true that both plaintiff and defendant had not only equal means of information, but equal knowledge of the affairs of the corporation in which they were both equally interested, but we cannot assume that defendant was equally cognizant with plaintiff of his private affairs and his financial condition. The plaintiff must be presumed to know his own financial condition.

The defendant alleged that the representations made to him by plaintiff that he was utterly insolvent, that even his life insurance policies were pledged for their full value, were false and knowingly false, and that he discovered their falsity about two years thereafter. How can we assume that of these things defendant had equal information with the plaintiff? In *Linnington v. Strong,* 107 Ill., 295, the Court said: "While the law requires of all persons the exercise of reasonable prudence in the business of life, and does not permit one to rest indifferent in reliance upon the interested representations of an adverse party, still there is a certain limit to this rule, and as between the original parties, when it appears that one has been guilty of an intentional and deliberate fraud, by which, to his knowledge, the other has been misled and influenced in his action, he cannot escape the legal consequences of his fraudulent conduct by saying that the fraud might have been discovered had the party whom he deceived exercised reasonable care and diligence." In 1 Jaggard on Torts, pp. 595 and 596, the author says: "There is, indeed, a strong inclination on the part of the courts to hold, without any qualification, that a person guilty of a fraudulent misrepresentation cannot escape the effects of his fault on the ground of the injured party's negligence. The doctrine is well settled, as a rule, that a party guilty of fraudulent conduct shall not be allowed to cry 'negligence,' as against his own deliberate fraud." *Blacknall v. Rowland,* 108 N. C., 554; *s. c.,* 116 N. C., 389; *May v. Loomis, supra.*

In determining this appeal, it is not necessary that we should lay down the rule for measuring the damages sustained by the defendant; but it seems proper for us to discuss this to some

extent. In *Irving v. Humphrey,* 1 Hopk., 284, the Court held that the defendant should be required to make his representations *good.* In *Crater v. Binninger,* 33 N. J. L., 513, the Court held: "In cases of fraud, the true rule of damages is, that the wrongdoer must answer for those results, injurious to the other party, which must be presumed to have been within his contemplation at the time of the commission of the fraud. The plaintiff having been enticed by the deceit of the defendant to enter into an oil speculation, the defendant was responsible for the moneys put into the scheme by the plaintiff in the ordinary course of the business, and which moneys were lost, and that from such moneys must be deducted the value of the interest which plaintiff retained in the property held by those associated in the speculation."

As defendant, under the doctrine laid down in *May v. Loomis, supra,* and since then approved by this Court, cannot rescind the contract and cannot restore the *status quo* existent at the time of the false representation, we think the proper measure of defendant's damage is the difference between the value of the assets of the corporation with full performance of his obligations by the plaintiff and the value at the time with plaintiff's obligations unperformed. All that plaintiff could have been required to do was to perform his obligations; if he escaped these by fraud, and the burden of the entire responsibility was assumed by defendant—the victim of the fraud—the plaintiff would have no just ground to complain that he should be required to answer in damages for a difference in value directly caused by his own fraud and deceit. This rule would eliminate the contention of plaintiff that the damages suffered by the defendant are damages resulting from a bad business venture. We think, therefore, that his Honor erred in rendering judgment for the plaintiff upon the pleadings. The judgment so rendered is vacated, and the case is remanded that the matters pleaded as a defense and counterclaim shall be submitted to a jury upon proper issues.

Reversed.