ELIZABETH PAGE ERICKSON AND HELEN PAGE GAITHER v. H. C. STARLING, EARLE JONES, AND RUTH I. PAGE, INDIVIDUALLY AND AS TRUSTEES; RUTH I. PAGE, EXECUTRIX OF THE ESTATE OF B. F. PAGE, DECEASED; W. H. KING DRUG COMPANY; PEABODY DRUG COMPANY; CAROLINA SURGICAL COMPANY; AND MRS. H. E. CRAVEN, FRED T. CRAVEN, WILLIAM M. CRAVEN, HENRY E. CRAVEN, JR., MRS. J. D. KASE, AND J. BEN COPPEDGE, MINORITY STOCKHOLDERS OF W. H. KING DRUG COMPANY.

(Filed 11 June, 1952.)

**1. Trial § 5—**

A trial is the examination before a competent tribunal, according to the law of the land, of the issues between the parties in a cause, whether they be issues of law or of fact, for the purpose of determining such issues. G.S. 1-170.

**2. Trial § 18—**

Issues of law must be tried by the judge; issues of fact, even though they involve matters in equity, must be tried by a jury unless trial by jury is waived. G.S. 1-172.

**3. Judgments § 17b—**

Where issues of fact are raised by the pleadings and trial by jury is not waived, the court is without power to enter a final judgment until the issues of fact are determined by the verdict of the jury.

**4. Pleadings § 15—**

A demurrer admits the truth of the well-pleaded factual allegations in the pleading of the adverse party solely for the purpose of testing the sufficiency of such allegations to state a cause of action or a defense, and therefore such admission forthwith ends if the demurrer is overruled.

**5. Same—**

While plaintiff may demur to any one or more of several defenses set up in the answer, he may not divide a single affirmative defense into its several constituent paragraphs or sentences, and demur separately to such several paragraphs or sentences segregated from their respective contexts. G.S. 1-141.

**6. Appeal and Error § 2—**

A decision upon a written demurrer is appealable by either party. G.S. 1-130.

**7. Pleadings § 28—**

A court of record has inherent power to render judgment on the pleadings where the facts shown and admitted on the pleadings entitle a party to such judgment.

**8. Same—**

A motion for judgment on the pleadings admits solely for its purposes the truth of all well-pleaded facts in the adversary's pleading together with all fair inferences to be drawn therefrom, and also the untruth of movant's allegations in so far as they are controverted by the adversary's pleading, and therefore if the motion is denied, movant is not precluded from having the action regularly tried upon all issues raised by the pleadings.

**9. Same—**

A motion for judgment on the pleadings is allowable only where the pleading of the opposite party is so fatally deficient in substance as to present no material issue of fact.

**10. Same—**

Upon motion for judgment on the pleadings the court is confined to determining whether any material issue of fact has been joined between the parties, and he may not hear extrinsic evidence or make findings of fact.

**11. Same—**

If the pleadings raise an issue of fact on any single material proposition, motion for judgment on the pleadings must be denied, and the court may not enter a partial judgment on the pleadings for a part of a litigant's claim, but must submit the issues of fact for the determination of the jury so that a single judgment which will completely and finally determine all the rights of the parties may be entered. G.S. 1-208.

**12. Appeal and Error § 2—**

An appeal lies from the granting of a motion for judgment on the pleadings, but if the motion is refused movant must note exception, proceed with the trial, and have the matter reviewed on appeal from final judgment.

**13. Trusts § 24—**

In this action for the removal of trustees and to recover against them for maladministration of the trust, the answers denying certain material allegations of the complaint and also drawing opposing inferences from admitted matters, as well as pleading new matter constituting extenuating circumstances in the nature of a single affirmative defense against the cause for the removal of the trustees, *is held* to require the overruling of plaintiffs' demurrers to the answers and the denial of plaintiffs' motions for judgment on the pleadings, and judgment of the lower court adjudicating the rights of the parties without a determination of the issues of fact by a jury is error.

**14. Attorney and Client § 10—**

It is error for the court to order corporate parties to pay specified fees to their attorneys, the corporations being at liberty to contract in respect to this matter for themselves.

APPEAL by plaintiffs from *Morris, J.,* at November Term, 1951, of WAKE.

Civil action by beneficiaries of trust to remove trustees, and to compel them to redress supposed breaches of trust.

This cause was before us at the Spring Term, 1951. *Erickson v. Starling,* 233 N.C. 539, 64 S.E. 2d 832.

For convenience of narration, Elizabeth Page Erickson and Helen Page Gaither are called the plaintiffs; H. C. Starling, Earle Jones, and Ruth I. Page, who are sued as individuals and also as trustees, are characterized as defendants; Ruth I. Page, who is likewise sued in her capacity as executrix of B. F. Page, is denominated the executrix; Mrs. H. E. Craven, Fred T. Craven, William M. Craven, Henry E. Craven, Jr., Mrs. J. D. Kase, and J. Ben Coppedge, who are minority stockholders of the W. H. King Drug Company, are designated as the minority stockholders; and the W. H. King Drug Company, the Peabody Drug Company, and the Carolina Surgical Supply Company, are given their respective corporate names.

The plaintiffs are the daughters of B. F. Page, who died testate on or about 22 July, 1949. During his lifetime, to wit, on 18 June, 1942, B. F. Page, who was the guiding spirit and principal stockholder of the W. H. King Drug Company, conveyed 400 shares of the common stock of the W. H. King Drug Company to H. C. Starling, Earle Jones, and Bessie F. Coffin, as trustees for a period of twenty-five years ending on 18 June, 1967. The trust instrument provides that the trustees are to hold the 400 shares of common stock during the continuance of the trust, and are

to vote it at all meetings of the stockholders of the W. H. King Drug Company "without proxy from the beneficiaries . . . as fully as if said trustees were the absolute owners of said stock;" that the trustees are to receive all dividends paid on the 400 shares of common stock during the existence of the trust, and are to pay half of such dividends to each plaintiff, if she be alive, or to her next of kin as defined by the North Carolina statute of distribution, if she be dead; and that upon the termination of the trust, *i.e.,* on 18 June, 1967, the trustees are to transfer 200 of the 400 shares of the common stock to each plaintiff, if she be alive, or to her next of kin as defined by the North Carolina statute of distribution, if she be dead.

The trust instrument sets forth the reasons which prompted B. F. Page to create the trust and to appoint H. C. Starling, Earle Jones, and Bessie F. Coffin as trustees in these words: "I have named as trustees . . . persons connected with or familiar with the policies of W. H. King Drug Company, and it is my desire that the business of W. H. King Drug Company continue to be conducted in accordance with the same policies, in so far as conditions will permit, the said W. H. King Drug Company having been organized and its business developed and conducted so far in accordance with said policies and having met with a fair degree of success. I am creating this trust because I believe it is in the best interest of my . . . daughters and others who may become beneficiaries under this trust, and with the realization that my . . . daughters and others who may become beneficiaries hereunder have little knowledge of and experience in business matters and are not or may not be familiar with the policies under which the business of W. H. King Drug Company has been conducted. Having full and complete confidence in the persons named herein as trustees . . ., and desiring to avoid all unnecessary expenses and red tape, I do not require that said trustees or those who may succeed to the position of trustee give any bond in connection with their duties as trustees hereunder." The trust instrument does not describe in any way "the policies under which the business of W. H. King Drug Company has been conducted."

At the time of the creation of the trust the W. H. King Drug Company was, and still is, a well established North Carolina corporation doing business as a wholesaler of drugs at Raleigh, North Carolina, and having 649 shares of voting common stock and 535 shares of non-voting preferred stock outstanding. It has always held all of the capital stock of the Peabody Drug Company, another North Carolina corporation doing business as a wholesaler of drugs at Durham, North Carolina. During 1948, the W. H. King Drug Company and its subsidiary, the Peabody Drug Company, acquired, and still own, all of the capital stock of the King Drug Company, a corporation engaged in wholesaling drugs in

South Carolina. Moreover, the W. H. King Drug Company owned 115 of the 215 shares of the capital stock of the Carolina Surgical Supply Company, a North Carolina corporation dealing in surgical supplies at Raleigh, North Carolina, until 31 December, 1947.

H. C. Starling and Earle Jones have been acting as trustees of the B. F. Page trust since its creation. Their original co-trustee, Bessie F. Coffin, resigned her trust on 23 December, 1946, and was succeeded by their present co-trustee, Ruth I. Page. As holders of the title to the 400 shares of common stock, the trustees have had power to control the affairs of the W. H. King Drug Company since 18 June, 1942.

Under its charter, the W. H. King Drug Company is governed by a board of five directors. H. C. Starling became director and treasurer before the execution of the trust instrument, and continued in those capacities until the death of B. F. Page on or about 22 July, 1949. Since that event he has served as director and president. Earle Jones, who was an experienced employee of the company at the creation of the trust, has been director and vice-president since 21 January, 1943. Bessie F. Coffin became director and secretary prior to the execution of the trust instrument, and filled those posts until she relinquished her trust. Her successor, Ruth I. Page, has been director since January, 1949, and secretary-treasurer since August, 1949. According to the allegations of the answers, B. F. Page was the president and managing head of the company until his death.

About eighteen months after that event, to wit, on 24 January, 1951, the plaintiffs brought this action, alleging that the trustees had misused their control of the W. H. King Drug Company and its subsidiaries in specified ways. The plaintiffs pray that the defendants be removed as trustees, and that they, the executrix, and the Carolina Surgical Supply Company be compelled to redress certain supposed breaches of trust.

The original pleadings consist of a complaint comprising 80 paragraphs, and six answers containing 404 paragraphs. The allegations of the complaint and the corresponding paragraphs of the answers are summarized in the numbered paragraphs set out below.

1. The complaint alleges and the answers admit that on 31 December, 1947, the W. H. King Drug Company sold and transferred "50 shares of the common stock of Carolina Surgical Supply Company to H. C. Starling, individually, and 50 shares of said stock to B. F. Page . . . at a price of $100.00 per share." The complaint asserts that this stock had a book value exceeding $300.00 per share at the time of the sale, whereas the answers aver that its market value "was . . . not in excess of $100.00 per share" at that time. The answers state that the sale of the common stock of the Carolina Surgical Supply Company was made at the suggestion of B. F. Page, the creator of the trust; that both he and Starling

acted in the utmost good faith in the acquisition of the stock; that no dividends have been declared or paid on the stock; and that consequently the transaction has not yet caused any financial loss to the W. H. King Drug Company or the plaintiffs. The answers declare that Starling is willing to transfer his 50 shares of the common stock of the Carolina Surgical Supply Company to the W. H. King Drug Company "for the same amount he paid therefor," and that Ruth I. Page, as executrix and legatee of B. F. Page, "will abide by such order as the court may deem proper with respect" to the 50 shares of such stock bought by her testator.

2. The complaint alleges and the answers admit that on 16 May, 1944, the Peabody Drug Company loaned $30,000.00 "to one of its officers," and that such sum was fully repaid to it in installments before 1 July, 1947. The answers assert in express terms that the loan was made to B. F. Page, "the father of the plaintiffs, who was amply solvent, . . . for the purpose of enabling him to pay the gift tax . . . of $39,825.00 levied by the United States upon the gift of stock which was placed in trust by Mr. Page for the benefit of his daughters and others"; that "said gift tax would have become an obligation of plaintiffs if . . . B. F. Page had not . . . paid it"; and that "consequently the loan now complained of by the plaintiffs was for their benefit." The complaint contains the additional allegations that the Peabody Drug Company borrowed the $30,000.00 "at an interest rate of two per cent per annum," and loaned the same "to one of its officers . . . without any interest whatsoever." The answers take different positions in respect to these additional averments. The three defendants say they are "denied," while the executrix declares that the "Peabody Drug Company paid interest in the sum of $1,625.00 to the bank from which said money was borrowed, and said amount is recognized and allowed as a valid claim against the estate of . . . (B. F. Page) and will be paid by said estate."

3. The complaint alleges and the answers admit that during the existence of the trust the W. H. King Drug Company "erected a new brick building three stories in height along the east side of South Wilmington Street in the City of Raleigh" at a cost of approximately $95,000.00 for both land and building, and leased a portion of the structure to the Carolina Surgical Supply Company for a monthly rent never exceeding $300.00. The complaint contains the additional allegation that the portion of the building leased to the Carolina Surgical Supply Company "has had . . . at all times . . . a rental value of not less than $450.00 per month." The answers deny this additional averment. Indeed, the answer of the Carolina Surgical Supply Company declares in specific terms that "the return to W. H. King Drug Company from the occupancy of said space by this defendant was fair, reasonable, and fully compensatory."

4. The complaint sets forth these allegations in paragraph 28: That "certain employees of W. H. King Drug Company, whose salaries were paid entirely by said corporation, have rendered regular and substantial services . . . in the field of bookkeeping and accounting to . . . the Carolina Surgical Supply Company without any compensation or reimbursement from Carolina Surgical Supply Company to said employees or to W. H. King Drug Company." The answer of the three defendants makes this response: "Employees of the W. H. King Drug Company have rendered minor services in the nature of posting book entries periodically for the benefit of Carolina Surgical Supply Company without any compensation or reimbursement in actual money, before August 1, 1949, but said services were negligible in value and the W. H. King Drug Company suffered no loss whatever by reason of such accommodations. Except as herein stated, the allegations of paragraph 28 are denied." The answer of the Carolina Surgical Supply Company makes virtually the same response plus the additional averment that "the W. H. King Drug Company received compensating advantages for the same."

5. The complaint alleges and the answers admit that on 22 September, 1948, the Peabody Drug Company loaned $12,500.00 to H. C. Starling, who was then serving as one of its officers, and that such sum was fully repaid to it on 2 February, 1950. The complaint contains the further allegation that the loan resulted in financial loss to the Peabody Drug Company. The answers deny this additional averment, and assert that Starling paid the Peabody Drug Company interest on the loan at the prevailing interest rate. Moreover, the answer of the three defendants states that Starling borrowed the $12,500.00 from the Peabody Drug Company "at a time when the W. H. King Drug Company, the parent corporation, owed him money in excess of said sum which it was not then convenient for the company to pay."

6. The complaint alleges that between 31 December, 1941, and the date of the summons H. C. Starling made nine separate loans aggregating $140,500.00 to the W. H. King Drug Company, and received from it as interest on these loans sums totaling $6,429.84. The answers make this response to these averments: "Both before and during the existence of said trust, the W. H. King Drug Company has from time to time been indebted to the defendant H. C. Starling. Said debts have been evidenced by promissory notes . . . in the amounts . . . set forth in paragraph 37. However, . . . these debts did not represent borrowing or loans in the usual sense. It usually happened that at the end of a year the company's funds were all in use or needed for inventory and other working capital purposes and were not immediately available for paying officers' salaries and bonuses. In such instances, the company frequently gave the defendant Starling a note for the amount due him, bearing interest at the rate

of six per cent and, after interest rates in general had dropped substantially, at the rate of four per cent. When the W. H. King Drug Company retained the money it owed the defendant Starling, it was understood and agreed that the company might use the money as long as needed and could repay it when it was convenient to do so, whereas bank loans would ordinarily have been payable in sixty or ninety days, at the end of which time the company would have been obliged to repay the loan or make new arrangements with the bank. In the judgment of the directors of the W. H. King Drug Company it was in the best interests of the company to delay compensation payments to Starling and the other officers under the conditions just stated, rather than to borrow too frequently at the bank and thereby run the risk of jeopardizing its credit standing. This same procedure was followed with Mr. B. F. Page and . . . as to Miss Bessie F. Coffin, aunt of the plaintiffs . . . There are now no outstanding debts from the W. H. King Drug Company to H. C. Starling." The complaint contains the further allegation that Starling received interest from the W. H. King Drug Company on the nine loans at rates exceeding those currently charged by banks on like loans. The answers deny this additional averment.

7. The complaint alleges and the answers admit that on 1 January, 1950, the W. H. King Drug Company had a surplus of approximately $817,206.65. The complaint contains the additional allegations that this surplus was available for the payment of dividends on the common stock, and that the three defendants, who were then serving as directors, breached their trust by failing to declare the surplus as dividends to the holders of the common stock of the W. H. King Drug Company. The answers deny these additional averments. Moreover, they expressly assert that the surplus had accumulated over the preceding 25 or 30 years; that it was "largely, wisely, and properly invested in real estate, inventory, subsidiaries, accounts receivable, furniture and fixtures, machinery and equipment, and other business assets"; and that the use of such surplus for the payment of dividends on the common stock of the W. H. King Drug Company would compel the virtual liquidation of the company and defeat the purpose of B. F. Page in creating the trust.

8. The complaint alleges that the net earnings of the W. H. King Drug Company "after the payment of taxes and . . . dividends to the holders of preferred stock" totaled $513,146.38 during the period beginning 1 January, 1942, and ending 31 December, 1949; that only $53,867.00 of these earnings were paid out as dividends on the common stock of the company; and that only $32,000.00 of these dividends accrued to the plaintiffs as beneficiaries of the B. F. Page trust. The answers admit these allegations. They further aver, however, that the dividend policy pursued by the W. H. King Drug Company during this period was recom-

mended by B. F. Page and was in harmony with the wise policy established by him "many years ago . . . whereby a large part of net earnings was used for working capital and . . . expansion rather than for immediate payment of dividends"; that the policy has resulted "in marked expansion, growth, increased business, and in large financial gains to the company, all of which . . . inure to the direct benefit of the plaintiffs and the contingent beneficiaries designated in . . . (the) trust indenture"; and that as a consequence of such policy "the volume of business has more than trebled and the net profits have much more than quadrupled . . . in a little over eight years." The answers further declare that the net earnings of the W. H. King Drug Company amounted to $159,201.48 during 1950; that the W. H. King Drug Company has made payments totaling $65,333.34 to the plaintiffs from its net earnings during the period beginning on 22 July, 1949, the date of B. F. Page's death, and 30 June, 1951; and that "in 1951 the W. H. King Drug Company inaugurated a policy of paying monthly instead of semi-annual dividends and has in every month of 1951 declared and paid a dividend . . . of $1,000.00 a month to each of the plaintiffs."

9. The complaint alleges and the answers admit that the three defendants were paid the following sums as salaries and bonuses by the W. H. King Drug Company and its subsidiary, the Peabody Drug Company, between 1 January, 1942, and 30 September, 1950: H. C. Starling, $224,-093.58; Earle Jones, $98,371.80; and Mrs. Ruth I. Page, $461.60. The complaint contains the additional allegations that such payments were excessive and illegal, and that the W. H. King Drug Company and the Peabody Drug Company are entitled to judgment against the three defendants for the amounts of the same. The answers deny these further averments, and make these allegations of new matter: That B. F. Page clearly contemplated that the trustees were to work for the W. H. King Drug Company and its subsidiary corporations and were to receive reasonable compensation for so doing; that the salaries and bonuses paid H. C. Starling and Earle Jones were reasonable and were fixed in conformity with "an established practice of the W. H. King Drug Company and other companies in the wholesale drug field to pay compensation to executive officers on a basis of both fixed monthly or semi-monthly salary payments and incentive or bonus payments based on results accomplished and services rendered"; and that during the period beginning on 1 January, 1942, and ending on 31 December, 1950, the W. H. King Drug Company and its two wholly owned subsidiaries, the Peabody Drug Company and King Drug Company, made gross sales aggregating $42,337,761.38, had net earnings before payment of income taxes totaling $2,040,198.33, and had net earnings after payment of income taxes amounting to $1,033,842.85.

10. The complaint alleges that all of the acts described in it were done with the knowledge and consent of the trustees; that such acts constituted breaches of trust on the part of the trustees; that by reason thereof the three defendants ought to be removed from their posts and some "proper person . . . or persons" should be appointed by the court to administer the trust; and that the three defendants, the executrix, and the Carolina Surgical Supply Company ought to be required to redress the several breaches of trust in which they participated. The answers deny these allegations. The three defendants make these further assertions in their further answer and defense: "These defendants have at all times endeavored in the utmost good faith to carry out their full duties as trustees. They have paid to the plaintiffs all dividends received by them on the stock in trust, except expenses in the sum of $2.42 incurred for bank charges. They have voted the stock in trust for the election as directors of the W. H. King Drug Company of the persons they considered best equipped and qualified to continue to conduct the business of the company in accordance with the same policies the company had theretofore followed. They voted said stock to continue Mr. Page, the father of the plaintiffs, in office as director, president and chief executive of the company, because of his long experience with the company and because of their confidence in his business judgment, ability, and integrity. From the time the trust was set up in 1942 to the time of his last illness, in 1949, Mr. Page was in full accord with and approved the manner in which the W. H. King Drug Company and its subsidiaries were conducted. The record of the company and its subsidiaries . . . shows that the directors so elected have managed the business affairs of the said company in accordance with the policies previously followed by the company and that under their management the company and its subsidiaries have achieved remarkable success."

After the original pleadings were filed, the plaintiffs adopted the theory that the six answers admit every material averment in the complaint and fail to set up any defense or new matter sufficient in law to defeat their claims or any of them. They thereupon demurred in writing to each of the answers, and at the same time moved for judgment on the pleadings establishing their alleged cause of action against all of the parties defendant. The demurrers segregate scores of paragraphs and sentences from their respective contexts in the several answers, and challenge the legal sufficiency of each of such paragraphs or sentences on the ground that it does "not constitute any defense, excuse or justification for the breaches of duty and maladministration by the trustees alleged in the complaint."

Although nothing was presented to him for decision except the demurrers and the motions for judgment on the pleadings, the presiding judge in the court below made voluminous "findings of fact . . . upon the

pleadings" wherein he found in substance that the truth relating to the matters mentioned in numbered paragraphs 1, 2, 3, and 6 appears in the complaint and that the truth respecting the matters stated in numbered paragraphs 4, 5, 7, 8, and 9 is to be found in the answers. He then made extensive conclusions of law on the facts thus found, and entered a decree which is final in some respects and interlocutory in others. The decree incorporates these various adjudications: (1) That "the defendant Starling shall forthwith transfer to the defendant W. H. King Drug Company certificate . . . representing 50 shares of stock in the Carolina Surgical Supply Company purchased by said defendant December 31, 1947, upon the payment to him by said W. H. King Drug Company of the sum of $5,000.00." (2) That "the defendant Ruth I. Page, executrix of the estate of B. F. Page is ordered and directed forthwith to transfer certificate . . . representing 50 shares of the capital stock of Carolina Surgical Supply Company to W. H. King Drug Company upon the payment into said estate by said W. H. King Drug Company of the sum of $5,000.00." (3) That "the defendant Ruth I. Page, executrix of the estate of B. F. Page is ordered and directed forthwith to reimburse Peabody Drug Company with respect to the interest paid by said corporation in connection with the . . . loan of $30,000.00 made by said corporate defendant to B. F. Page." (4) That "the defendant Carolina Surgical Supply Company is ordered . . . to account to the defendant W. H. King Drug Company for the difference between the rent paid from the date of occupancy of its space and the reasonable rental value thereof to be determined according to law." (5) That the Carolina Surgical Supply Company is under no obligation to reimburse the W. H. King Drug Company for the bookkeeping services rendered to it by the employees of the W. H. King Drug Company because "said services were negligible in value and the W. H. King Drug Company suffered no loss whatever by reason of such accommodations." (6) That the loan of $12,500.00 made by the Peabody Drug Company to the defendant Starling occasioned the lender no financial loss; (7) That "the defendant Starling is ordered . . . to account to the corporate defendants for all interest on loans by him to said corporations in excess of the lowest rate of interest at which current loans were obtained by said corporations from commercial banks." (8) That the dividend-paying policy of the W. H. King Drug Company was "consonant with the intentions of the creator of the trust, the best interest of the corporate properties which they managed and the welfare of the beneficiaries of the trust." (9) That the defendants H. C. Starling, Earle Jones, and Ruth I. Page are not liable to the W. H. King Drug Company or any of its subsidiaries for any salaries or bonuses received by them because their compensation bears a reasonable relation to the earnings of the corporation and the services rendered by them. (10)

That the three defendants shall continue in their offices as trustees. (11) That the costs of the proceeding are taxed against the corporate defendants. (12) That the cause is retained on the docket so that full supervision of the trust may continue.

The presiding judge also entered orders directing the W. H. King Drug Company and the Peabody Drug Company and Carolina Surgical Supply Company to pay specified fees to their respective attorneys.

The plaintiffs excepted to the decree and the orders "to the extent that said decree and orders are adverse to them" and appealed to this court, assigning various findings, conclusions, and rulings as error.

*Lassiter, Leager & Walker for the plaintiffs, appellants.*

*Smith, Leach & Anderson and Douglass & McMillan for the defendants, H. C. Starling, Earle Jones, and Ruth I. Page, individually and as trustees, and Ruth I. Page, executrix of the estate of B. F. Page, appellees.*

*Brassfield & Maupin for the defendants, W. H. King Drug Company, Peabody Drug Company, Mrs. H. E. Craven, Fred T. Craven, William M. Craven, Henry E. Craven, Jr., Mrs. J. D. Kase, and J. Ben Coppedge, appellees.*

*Ehringhaus & Ehringhaus for the defendant, Carolina Surgical Supply Company, appellee.*

ERVIN, J. Courts are created to try causes. A trial is the examination before a competent tribunal, according to the law of the land, of the issues between the parties in a cause, whether they be issues of law or of fact, for the purpose of determining such issues. G.S. 1-170; *Cooney v. Cooney,* 25 Cal. 2d 202, 153 P. 2d 334; *Finn v. Spagnoli,* 67 Cal. 330, 7 P. 746; *Tregambo v. Comanche Mill & Mining Co.,* 57 Cal. 501; *Breed v. Hobart,* 187 Mo. 140, 86 S.W. 108; *State ex rel. Carleton v. District Court of Lewis and Clark County,* 33 Mont. 138, 82 P. 789, 8 Ann. Cas. 752; *Kromer v. Kear,* 86 Ohio App. 309, 90 N.E. 2d 422; *Cherniak v. Prudential Ins. Co. of America,* 339 Pa. 73, 14 A. 2d 334.

Issues of law must be tried by the judge; but issues of fact must be tried by a jury, unless trial by jury is waived. G.S. 1-172; *Sparks v. Sparks,* 232 N.C. 492, 61 S.E. 2d 356. This is true even though the issues of fact are raised by pleadings in actions for the enforcement of equitable rights. *Comrs. v. George,* 182 N.C. 414, 109 S.E. 77; *Boles v. Caudle,* 133 N.C. 528, 45 S.E. 835; *Ely v. Early,* 94 N.C. 1; *Worthy v. Shields,* 90 N.C. 192; *Chasteen v. Martin,* 81 N.C. 51.

Where issues of fact are raised by the pleadings in a cause and trial by jury is not waived, the verdict of a jury determining the issues of fact is an indispensable step in the trial of the cause, and the court is without

power to enter a final judgment in the absence of such verdict.  *Miller v. Dunn,* 188 N.C. 397, 124 S.E. 746.

A demurrer and a motion for judgment on the pleadings are somewhat related procedural devices.  Each denies the legal sufficiency of the pleading of an adversary and raises an issue of law upon the facts stated in such pleading.  The scope of a motion for judgment on the pleadings surpasses that of a demurrer, however, in that the former is an application for an immediate judgment in the movant's favor.  71 C.J.S., Pleading, section 425.  Whether the tendency of motions for judgment on the pleadings to nullify the statutes permitting amendments to pleadings in cases where demurrers are sustained renders these procedural devices incompatible when they are simultaneously invoked is an interesting question which need not be answered on the present record.  *Ray v. Hill,* 194 Wash. 321, 77 P. 2d 1009.

A demurrer admits the truth of all well-pleaded factual allegations in the pleading to which objection is taken, and asserts as a legal proposition that those allegations do not state a cause of action or a defense, and submits that issue of law, and that issue of law alone, to the judge for decision.  The admission inherent in a demurrer is not absolute.  A demurrer admits the truth of the well-pleaded factual allegations in the pleading of the other side for the purpose, and only for the purpose, of enabling the judge to pass on the sufficiency in law of such pleading.  In consequence, the conditional admission made by a demurrer forthwith ends if the demurrer is overruled.  *Kemp v. Funderburk,* 224 N.C. 353, 30 S.E. 2d 155; *Insurance Co. v. Stadiem,* 223 N.C. 49, 25 S.E. 2d 202; *Mallard v. Housing Authority,* 221 N.C. 334, 20 S.E. 2d 281; *Bowen v. Mewborn,* 218 N.C. 423, 11 S.E. 2d 372; *Leonard v. Maxwell,* 216 N.C. 89, 3 S.E. 2d 316; *Vincent v. Powell,* 215 N.C. 336, 1 S.E. 2d 826; *Toler v. French,* 213 N.C. 360, 196 S.E. 312; McIntosh: North Carolina Practice and Procedure in Civil Cases, section 445.

The statute authorizing demurrers to answers is couched in these words: "The plaintiff may in all cases demur to an answer containing new matter, where, upon its face, it does not constitute a counterclaim or defense; and he may demur to one or more of such defenses or counterclaims, and reply to the residue.  Such demurrer shall be heard and determined as provided for demurrers to the complaint."  G.S. 1-141.

This statute makes it plain that where an answer contains either in form or in substance a denial of essential allegations of the complaint, the whole answer is not demurrable.  It specifies, however, that a demurrer is the proper method by which to determine the sufficiency of an affirmative defense set out in an answer.  *Smith v. Smith,* 225 N.C. 189, 34 S.E. 2d 148, 160 A.L.R. 460; *Leary v. Land Bank,* 215 N.C. 501, 2 S.E. 2d 570; *Insurance Co. v. McCraw,* 215 N.C. 105, 1 S.E. 2d 369;

*Toler v. French, supra; Long v. Oxford,* 108 N.C. 280, 13 S.E. 112; *Foy v. Haughton,* 83 N.C. 467; *Lee v. Beaman,* 73 N.C. 410; *Blackwell v. Willard,* 65 N.C. 555, 6 Am. Rep. 749. Indeed, it provides in express terms that where an answer contains several separate affirmative defenses, the plaintiff "may demur to one or more of such defenses . . . and reply to the residue." But nothing in the statute authorizes a plaintiff to dissect a single affirmative defense into its several constituent paragraphs or sentences, and to demur separately to such paragraphs or sentences segregated from their respective contexts in the affirmative defense. *Schneider v. Journal-Times Co.,* 247 Wis. 391, 20 N.W. 2d 572.

Under the code of civil procedure, a decision upon a written demurrer is appealable by either party. G.S. 1-130.

A court of record has inherent power to render judgment on the pleadings where the facts shown and admitted by the pleadings entitle a party to such judgment. *Raleigh v. Fisher,* 232 N.C. 629, 61 S.E. 2d 897; 71 C.J.S., Pleading, section 424.

A motion for judgment on the pleadings is in the nature of a demurrer. *Mitchell v. Strickland,* 207 N.C. 141, 176 S.E. 468; *Pridgen v. Pridgen,* 190 N.C. 102, 129 S.E. 419; *Alston v. Hill,* 165 N.C. 255, 81 S.E. 291. Its function is to raise this issue of law: Whether the matters set up in the pleading of an opposing party are sufficient in law to constitute a cause of action or a defense. *Raleigh v. Fisher, supra; Adams v. Cleve,* 218 N.C. 302, 10 S.E. 2d 911.

When a party moves for judgment on the pleadings, he admits these two things for the purpose of his motion, namely: (1) The truth of all well-pleaded facts in the pleading of his adversary, together with all fair inferences to be drawn from such facts; and (2) the untruth of his own allegations in so far as they are controverted by the pleading of his adversary. *Raleigh v. Fisher, supra; Ingle v. Board of Elections,* 226 N.C. 454, 38 S.E. 2d 566; *Adams v. Cleve, supra; Oldham v. Ross,* 214 N.C. 696, 200 S.E. 393; *Crutchfield v. Foster,* 214 N.C. 551, 200 S.E. 395; *Churchwell v. Trust Co.,* 181 N.C. 21, 105 S.E. 889; *Alston v. Hill, supra; Helms v. Holton,* 152 N.C. 587, 67 S.E. 1061. These admissions are made only for the purpose of procuring a judgment in the movant's favor. *Hale v. Gardiner,* 186 Cal. 661, 200 P. 598. Consequently, the movant is not precluded from having the action regularly tried upon any issues raised by the pleadings if his motion for judgment on the pleadings is denied. *Minneapolis St. Ry. Co. v. City of Minneapolis,* 229 Minn. 502, 40 N.W. 2d 353; *Vaughn v. Omaha Wimsett System,* 143 Neb. 470, 9 N.W. 2d 792; *Southern Surety Co. v. Williams,* 83 Okl. 171, 201 P. 244.

A motion for judgment on the pleadings is allowable only where the pleading of the opposite party is so fatally deficient in substance as to

present no material issue of fact. *Finance Co. v. Luck,* 231 N.C. 110, 56 S.E. 2d 1; *Jones v. McBee,* 222 N.C. 153, 22 S.E. 2d 226; *Dunn v. Tew,* 219 N.C. 286, 13 S.E. 2d 536. A complaint is fatally deficient in substance, and subject to a motion by the defendant for judgment on the pleadings if it fails to state a good cause of action for plaintiff and against defendant. *Raleigh v. Fisher, supra.* An answer is fatally deficient in substance and subject to a motion by the plaintiff for judgment on the pleadings if it admits every material averment in the complaint and fails to set up any defense or new matter sufficient in law to avoid or defeat the plaintiff's claim. *Hoover v. Crotts,* 232 N.C. 617, 61 S.E. 2d 705; *Wike v. Guaranty Co.,* 229 N.C. 370, 49 S.E. 2d 740; *Carroll v. Brown,* 228 N.C. 636, 46 S.E. 2d 715; *Smith v. Smith,* 225 N.C. 189, 34 S.E. 2d 148, 160 A.L.R. 460; *Oldham v. Ross, supra; Churchwell v. Trust Co., supra.*

On a motion for judgment on the pleadings, the presiding judge should consider the pleadings, and nothing else. *Johnson v. Insurance Co.,* 219 N.C. 445, 14 S.E. 2d 405. He should not hear extrinsic evidence, or make findings of fact. 71 C.J.S., Pleading, section 508 (2). If he concludes on his consideration of the pleadings that a material issue of fact has been joined between the parties, he should deny the motion in its entirety, and have the issue of fact tried and determined in the way appointed by law before undertaking to adjudicate the rights of the parties. The law does not authorize the entry of a judgment on the pleadings in any case where the pleadings raise an issue of fact on any single material proposition. *Hoover v. Crotts, supra; Credit Corp. v. Roberts,* 230 N.C. 654, 55 S.E. 2d 85; *Brown v. Moore,* 229 N.C. 406, 50 S.E. 2d 5; *Wike v. Guaranty Co., supra; Carroll v. Brown, supra; Metros v. Likas,* 227 N.C. 703, 42 S.E. 2d 601; *Insurance Co. v. Wells,* 225 N.C. 547, 35 S.E. 2d 631; *Lockhart v. Lockhart,* 223 N.C. 123, 25 S.E. 2d 465; *Adams v. Cleve, supra; Redmond v. Farthing,* 217 N.C. 678, 9 S.E. 2d 405; *LaVecchia v. Land Bank,* 216 N.C. 28, 3 S.E. 2d 276; *Oldham v. Ross, supra; Allen v. Allen,* 213 N.C. 264, 195 S.E. 801; *O'Briant v. Lee,* 212 N.C. 793, 195 S.E. 15; *Smith v. Turnage-Winslow Co.,* 212 N.C. 310, 193 S.E. 685; *Petty v. Insurance Co.,* 210 N.C. 500, 187 S.E. 816; *Mitchell v. Strickland, supra; Bessire & Co. v. Ward,* 206 N.C. 858, 175 S.E. 208; *Hafleigh v. Crossingham,* 206 N.C. 333, 173 S.E. 619; *Trust Co. v. Wilder,* 206 N.C. 124, 172 S.E. 884; *Bank v. Vance,* 205 N.C. 103, 170 S.E. 119; *Foster v. Moore,* 204 N.C. 9, 167 S.E. 383; *Commissioner of Banks v. Johnson,* 202 N.C. 387, 162 S.E. 895; *Keys v. Tuten,* 199 N.C. 368, 154 S.E. 631; *Harvey v. Oettinger,* 194 N.C. 483, 140 S.E. 86; *Barnes v. Trust Co.,* 194 N.C. 371, 139 S.E. 689; *Brinson v. Morris,* 192 N.C. 214, 134 S.E. 453; *Pridgen v. Pridgen, supra; Sanders v. Mayo,* 186 N.C. 108, 118 S.E. 910; *Public Service Co. v. Power Co.,* 181 N.C. 356, 107 S.E. 226; *Churchwell v. Trust Co., supra; Willis v. Williams,* 174 N.C.

769, 94 S.E. 513; *Barbee v. Penny,* 174 N.C. 571, 94 S.E. 295; *Moore v. Bank,* 173 N.C. 180, 91 S.E. 793; *Alston v. Hill, supra; Newsome v. Bank,* 165 N.C. 91, 80 S.E. 1062; *Williams v. Hutton,* 164 N.C. 216, 80 S.E. 257; *Cotton Mills v. Hosiery Mills,* 154 N.C. 462, 70 S.E. 910; *Helms v. Holton, supra; Penny v. Ludwick,* 152 N.C. 375, 67 S.E. 919; *Lewis v. Foard,* 112 N.C. 402, 17 S.E. 9; 71 C.J.S., Pleading, section 429.

As a consequence, it is not proper to enter a partial judgment on the pleadings for a part of a litigant's claim, leaving controverted issues of fact relating to other parts of such claim open for subsequent trial. The law requires a lawsuit to be tried as a whole and not as fractions. Moreover, it contemplates the entry of a single judgment which will completely and finally determine all the rights of the parties. G.S. 1-208; *Raleigh v. Edwards,* 234 N.C. 528, 67 S.E. 2d 669.

An appeal lies when the court grants a motion for judgment on the pleadings and enters judgment accordingly. *Murray v. Southerland,* 125 N.C. 175, 34 S.E. 270; 4 C.J.S., Appeal and Error, section 116 (8). But the refusal of a motion for judgment on the pleadings is not appealable. The proper practice in such event is for the movant to note an exception to the ruling denying his motion and proceed with the trial. The ruling will then be reviewed on appeal from the final judgment. *Rodgers v. Todd,* 225 N.C. 689, 36 S.E. 2d 230; *Ornoff v. Durham,* 221 N.C. 457, 20 S.E. 2d 380; *Cody v. Hovey,* 216 N.C. 391, 5 S.E. 2d 165; *Hafleigh v. Crossingham, supra; Shelton v. Hodges,* 197 N.C. 221, 148 S.E. 25; *Gilliam v. Jones,* 191 N.C. 621, 132 S.E. 566; *Pender v. Taylor,* 187 N.C. 250, 121 S.E. 444; *Duffy v. Hartsfield,* 180 N.C. 151, 104 S.E. 139; *Barbee v. Penny, supra; Duffy v. Meadows,* 131 N.C. 31, 42 S.E. 460; *Cameron v. Bennett,* 110 N.C. 277, 14 S.E. 779; *Walker v. Scott,* 106 N.C. 56, 11 S.E. 364.

The task of applying these rules of the adjective law to the instant case must now be performed.

The answers expressly deny material allegations of the complaint, and in that way directly raise issues of fact. Moreover, the complaint and the answers draw opposing inferences from admitted matters, and in that way indirectly raise other issues of fact. *Alston v. Hill, supra.* Furthermore, the answer of the three defendants pleads additionally extenuating circumstances in the nature of a single affirmative defense, which are well calculated to induce a judge in the exercise of a reasonable discretion to retain them in their posts as trustees despite any of the supposed breaches of trust on their part. *Ward v. Dortch,* 69 N.C. 277; 65 C.J., Trusts, section 447; American Law Institute's Restatement of the Law of Trusts, section 107 (a).

These things being true, the presiding judge should have overruled the demurrers, denied the motions for judgment on the pleadings in their entirety, and ordered the several issues of fact raised by the pleadings tried in the way appointed by law, *i.e.,* by a jury.

He did not pursue this course. As a result, we have an anomaly in law—a judgment declaring the rights of the parties in an action which has not yet been tried.

The record indicates that the presiding judge gave profound thought to the substantive law arising in this cause and entered a judgment in substantial accord with the findings of fact made by him. But these considerations cannot obviate the indisputable proposition that his findings of fact are based in large measure upon allegations of the complaint denied by the answers and upon averments of the answers not admitted by the plaintiffs, and that he was wholly without power in law to make them. The judgment cannot be sustained in part as a partial judgment on the pleadings for the very simple reason that the lower court had no legal authority to enter such a judgment.

For the reasons given, the judgment is set aside, and the cause is remanded for a new trial to the end that the material issues of fact raised by the pleadings may be submitted to a jury for decision. *Sparks v. Sparks, supra; Hershey Corp. v. R. R.,* 207 N.C. 122, 176 S.E. 265.

The orders directing the W. H. King Drug Company and the Peabody Drug Company and Carolina Surgical Supply Company to pay specified fees to their attorneys are likewise vacated. These corporations are at liberty to contract in respect to this matter for themselves.

The unfortunate turn taken by this case in the court below calls to mind a bit of advice received by the writer of this opinion from his father, who was a member of the North Carolina bar for sixty-five years. When the writer embarked on the practice of law, his father gave him this admonition: "Always salt down the facts first; the law will keep." The trial bench and bar would do well to heed this counsel. In the very nature of things, it is impossible for a court to enter a valid judgment declaring the rights of parties to litigation until the facts on which those rights depend have been "salted down" in a manner sanctioned by law.

Error.