ADRIAN HUGHES, JR., *v.* EDWARD H. BURKE,
TRUSTEE

[No. 8, October Term, 1934.]

*Decided November 19th, 1934.*

The cause was argued before BOND, C. J., PATTISON,
URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Wm. Purnell Hall,* with whom was *Elmer H. Miller* on
the brief, for the appellant.

*Daniel B. Leonard,* for the appellee.

ADKINS, J., delivered the opinion of the Court.

On November 5th, 1929, Adrian Hughes, Jr., and Molly
B. Hughes, his wife, entered into an agreement in writ-
ing which recited that said Adrian had left his wife
and declared his intention to live with her no more; that

there was a dispute between them with regard to the amount of money the husband should pay for the support of his wife and children; and that the arrangement thereinafter set forth had been agreed upon in settlement of said dispute, and to settle their marital and property rights. In consideration thereof and of his duty to provide for his wife and children, "and of the covenants on the part of his said wife hereinafter contained," the husband agreed (1) that the wife might live separate from him and free from his authority and that he would not use any violence or restraint to her person, or interfere with her or her liberty; (2) that all of her property should be her sole and separate property free from any claim of the husband, and that he would join in any conveyances thereof to enable her to deal with her property as if unmarried; (3) that he would during their joint lives pay to her for the support of herself and their children the sum of $3,120 annually in monthly payments, on or before the 8th day of each month, said monthly payments to be reduced in the amount of $30 as to each child that should die or marry or attain his or her majority or become self-supporting; also agreed to pay tuition of his son at college, but that so long as the wife continued to occupy a house mentioned, she should be paid $200 per month in lieu of the $260; (4) that she should have the care and custody of the two daughters and of the son during their minority, provided she should at all times properly provide for their support and education, and that the children should have the right to visit the father, and he should have the right to have them with him at all reasonable times. In consideration of said covenants on his part, she covenanted and agreed (1) not at any time to molest him or prosecute any one as having been instrumental in bringing about their separation; (2) not to incur any debt or liability on his account and to hold him harmless from any debt incurred by her, and, so long as he paid the monthly installments agreed upon, that she would not bring any suit for support, maintenance, or alimony or for the support and

474

maintenance of the children; (3) not to claim any interest as wife or widow or heir in his property, and that she would execute all necessary deeds or papers to enable him to dispose of his property, and to sign any papers necessary to enable him to change the beneficiary in life insurance policies; (4) to permit the children to visit him. It was further agreed that neither party by said agreement waived any cause for divorce which then existed or might thereafter arise; but that in the event of any suit for divorce involving alimony, the alimony should not exceed the said sum of $260 per month; and that said agreement should not be affected by a suit for divorce brought by either party or by any decree entered therein. It was further agreed that, in case he failed to make the payments agreed upon and she should elect to bring suit for alimony, the provisions in said agreement for monthly payments by him should become null and void, and that any allowance for alimony and support for her and the children should not exceed the amount provided in said agreement and should be subject to the terms therein provided, but otherwise the provisions of the agreement should not be affected by such suit. It was further agreed that, in the event she should fail to properly provide for the care, maintenance, support, and welfare of the children or any of them, the amount to be paid to her should be reduced by the deduction of thirty dollars per month per child and the custody of such children or child be arranged for to the satisfaction of said Adrian, and the decision of such failure should be left for the determination of Edward H. Burke, trustee under the deed of trust, which the said husband and wife have executed in order to more fully effectuate said agreement. It was further provided that the agreement might be terminated by a written agreement of the parties.

By the deed of trust executed on the same day, the husband and wife conveyed to Edward H. Burke, trustee, certain real estate in Baltimore County, in trust to sell the same and out of the proceeds to pay certain debts of the grantors, and to hold the balance of the proceeds, in-

vest and reinvest the same, and to pay the net income therefrom to the said Adrian during the joint lives of the husband and wife; provided that if and whenever the husband should fail to make any one or more monthly payments to the wife within five days of the due date thereof as provided in the above mentioned agreement, the trustee may pay the same for him out of the income or principal of the trust fund then in his hands, and the trustee is authorized to collect by suit or otherwise the amount of every such payment from the husband for the benefit of the trust estate, all of which payments so made for him by said trustee, the said Adrian covenants to pay to the trustee for the benefit of said estate and to preserve the corpus thereof intact. Upon the death of the wife in the lifetime of the husband, the entire net income from the trust estate to be paid to the husband during his life and upon his death the trustee to pay over the *corpus* to the children of said Adrian and Molly and their descendants *per stirpes*. And upon the death of said Adrian in the lifetime of his wife, the entire net income to be paid to her during her life, and after her death the *corpus* to be paid to the children and their descendants *per stirpes*. The trust may be terminated at any time by the agreement in writing of the grantors.

On January 16th, 1930, Mrs. Hughes assigned to Herschel H. Allen "all sums of money which from time to time may be due and payable to me" under said agreement and under said deed of trust, in trust to collect the same and hold the same or pay the same to the assignor during her life or for her support or for her children, their maintenance and education, "until the youngest of them living from time to time shall attain the age of twenty-one years, in such amount or amounts as said trustee in his absolute judgment and discretion shall from time to time deem best; and said trustee may, after the youngest of said children living from time to time shall have attained the age of twenty-one years, pay to Adrian Hughes, Jr., from time to time and from the funds in his hands, such sum as in the absolute judgment and discre-

476

tion of said trustee may not be necessary for my maintenance and support." It was provided that the declaration of trust should not be revocable. Substituted trustees were named in the event of the death or resignation of the original trustee.

On October 22nd, 1932, Edward H. Burke, trustee under the deed dated November 5th, 1929, sued Adrian Hughes, Jr. In the declaration there is a count for money paid by the plaintiff for the defendant at his request, and a second count in which it is recited that the defendant and Mollie B. Hughes, "who obtained a divorce *a vinculo matrimonii* from the defendant by decree of the Circuit Court of Baltimore City passed February 19, 1930," entered into the agreement of November 5th, 1929, the terms of which are stated as hereinbefore set out; there is also recited the deed of trust to the plaintiff of the same date hereinbefore set out; it also recites that on or about December 18th, 1929, the said Mollie B. Hughes failed properly to provide for the care, maintenance, support, and welfare of the children and that on January 16th, 1930, she, with the consent of said defendant and at his suggestion, executed to Herschel H. Allen the assignment hereinbefore set out; that thereafter the defendant paid to said Herschel H. Allen, trustee, the monthly sums of $170 due under said agreement of November 5th, 1929, until October 8th, 1932, when the defendant refused to pay the sum of $170 for the month of October, 1932, due under said agreement on or before October 8th, 1932, and refused to pay the same within five days thereafter, and has not paid the same; that thereupon the plaintiff, after notice to the defendant, and in accordance with the terms of said deed of trust, on October 17th, 1932, paid out of the *corpus* of said trust estate then in the plaintiff's hands the sum of $170 to the said Herschel H. Allen, trustee under assignment for Molly B. Hughes dated January 16th, 1930, aforesaid, and the said defendant has failed and refused to pay said sum to the plaintiff, although demand has been made upon him so to do.

Plaintiff claims $300 damages.

There were filed with the declaration an account, copy of the agreement of November 5th, 1929; copy of the deed of trust of same date; and copy of the assignment of January 16th, 1930. General issue pleas were filed by defendant on November 25th, 1932. On demand defendant filed a bill of particulars of his pleas, in which he set out that as a condition precedent to liability on his part under the agreement dated November 5th, 1929, Molly B. Hughes made certain covenants, more especially " 'That the said Molly B. Hughes shall not at any time hereafter molest the said Adrian Hughes, Jr., or prosecute anyone as having been instrumental in bringing about this separation', which covenant the said Molly B. Hughes has breached in the following manner, to wit" (here follow allegations of several alleged breaches of said covenant).

The pleas were demurred to, and the demurrer sustained, and, the defendant declining to further plead, judgment was entered in favor of plaintiff for the sum found to be due by the jury of inquisition, and the defendant appealed.

The two questions raised by this appeal are:

1. Did the alleged conduct of the wife constitute a breach of the covenant not to molest the husband?

2. If it did, could the breach of that covenant be pleaded as a defense in a suit against the husband to recover an allowance which he agreed to pay?

Taking these up in inverse order:

It is apparent from the terms of the agreement of November 5th, 1929, that the husband had abandoned his wife and had declared his intention to live with her no more; that notwithstanding that fact, and whatever justification he felt he had for so doing, he recognized that it was his duty to provide for her support and that of his children, and that the amount he agreed to pay was to take the place of any amount a court of equity would require him to pay in performance of his common law duty. The elaborate arrangement made by this agreement, and by the deed of trust executed at the same time, shows that the main purpose was to settle the property

478

rights of the parties and their rights in reference to the children, and that the agreement not to molest him, while a part of the consideration for his covenants, was incidental and not the moving cause. All that he agreed to do in the way of support was in performance of his common law duty. The wife secured a divorce on February 19, 1930 (a few months after the agreement), on the ground of abandonment, in which (according to statement of counsel on both sides) the agreement made by the parties was approved in lieu of alimony.

In the well considered case of *Fearan v. Aylesford*, 14 Q. B. Div. 792, it was held that "covenants in a separation deed by which respectively the husband has covenanted to pay annuity to a trustee for the wife and the trustee has covenanted that the wife shall not molest the husband must be construed as independent covenants in the absence of any express terms making them dependent, and therefore a breach of the covenant that the wife shall not molest the husband is not an answer to an action for the annuity." Counsel for appellant were in error in stating that this point was not passed on. It was so held by a majority of the court. In that case, just as in this, the covenants of each party were in consideration of the covenants of the other. See, also, *Sabbarese v. Sabbarese*, 104 N. J. Eq. 600, 146 A. 592.

We think the demurrer was properly sustained on that ground.

Not only is there no express provision in the agreement making the covenants of the parties dependent, but in the deed of trust from husband and wife to Edward H. Burke, executed on the same day, the obligation of the husband to make the payments agreed upon to the trustee is made absolute and unconditional, and on failure to make any of the payments as they respectively become due the trustee is authorized and directed to pay the same for the husband out of the income or principal of the trust fund in his hands, and to demand and receive and, if necessary, collect by suit, or otherwise, the amount of every such payment from the husband for the benefit of

the trust estate. And by the terms of the deed of trust, the trust may be terminated only by a writing signed and sealed by both the grantors.

Having found that the covenant not to molest could not be pleaded as a defense in this case, it becomes unnecessary to decide whether the alleged acts of the wife, if true, constituted a breach of the covenant not to molest, or to discuss them.

*Judgment affirmed, with costs to appellee.*