Civil action for enforcement of payments by defendant to plaintiff pursuant to terms of separation agreement.
The record discloses that on 6 February, 1941, defendant and plaintiff, who were husband and wife, having separated on 1 November, 1940, entered into a written separation agreement — executed in conformity with the provisions of G.S., 52-12, formerly C. S., 2515 — which provides, that "in consideration of the mutual covenants and agreement as are herein set forth, the said parties hereto agree as follows:
"1. That they shall hereafter live separate and apart from each other and independently of each other and each party hereto shall from the date hereof go his or her own way, without direction, molestation or control of the other party, and that the parties hereto further agree that they will not in any wise hereafter interfere with the other in any manner whatsoever and will refrain from molesting one another in any manner or speaking disparagingly of one another."
2. That they have "made an agreeable division of their household and kitchen furniture."
3. That upon signing and delivery of the agreement the husband paid to his wife the sum of $1,800 in cash, and agreed to pay to her "while she shall remain undivorced from the party of the first part, or be *Page 191 
unmarried," the sum of $150.00 per month beginning 10 March, 1941, but in no event to exceed in the aggregate the sum of $7,200.00.
4. That the husband relinquishes all right, title and interest in the property of his wife, including right of curtesy, and to administer upon or share in distribution of her estate.
5. That the wife relinquishes all right, title and interest in the property of her husband, including right of dower and to administer upon or share in distribution of her estate.
6. That each releases the other from any and all claims arising in tort or in contract "down to the signing of this agreement."
7. That the husband "shall become the owner of all real estate now held" by them "by the entireties," and that she will join in the execution of deeds or instruments necessary to vest title thereto in him, or such other party as he may direct.
8. That the agreement shall be binding and shall remain in full force and effect "even though a divorce be had between the parties hereto."
Plaintiff alleges in her complaint, summarily stated, that by the terms of the separation agreement she has (a) conveyed and quitclaimed to defendant all her right, title and interest and right of dower in both real and personal property of defendant, and right to administer upon his estate and to a distributive share of his personalty; (b) relinquished to defendant "her right for maintenance and support from the defendant"; and (c) released defendant of liability in tort and in contract, for all of which he agreed to pay a certain sum of money, and to pay $7,200.00 of it at the rate of $150.00 per month beginning 10 March, 1941; that defendant made the payments as agreed to and including 10 March, 1943, but, that, soon after obtaining a divorce on ground of two years' separation, and without any reason therefor, defendant quit paying, since which time installments amounting to $2,250.00 have fallen due under the terms of the agreement, and remain unpaid, after demand, and payment refused.
Defendant in answer to the various allegations of the complaint admits entering into the separation agreement, copy of which is attached to complaint, and avers that it is in writing and "speaks for itself as to all the terms and conditions thereof, except as the same was subsequently modified as hereinafter set forth." Defendant avers in substance that the various other allegations of the complaint are denied except in so far as "they may be found by the court to allege the true terms of the separation agreement."
And defendant, for a first further answer and defense, avers:
1. That it was the intention, understanding and agreement of the parties that the payment which "he" obligated himself to make under the terms of the separation agreement were to be conditioned upon the *Page 192 
faithful compliance by the plaintiff with all of the obligations assumed by her in said agreement, and specifically the paragraph of said agreement numbered one, wherein she promised and agreed not to molest or disturb or speak disparagingly of him.
2. That if the court should hold as a matter of law that said agreement as drawn fails to express the true intention and agreement of the parties as hereinabove averred, then defendant alleges that such omission was due to the mutual mistake of the parties and to an error of draftsmanship, and he prays the court that said instrument may be reformed and made to speak the true intention, understanding and agreement of the parties.
And defendant, for a second further answer and defense, avers (1) that within a short time after the execution of the separation agreement, plaintiff moved and established a residence out of the State, and, in breach of her agreement not to molest defendant or speak disparagingly of him, immediately entered upon a campaign of slander, vilification and personal abuse of him, which was carried on and continued with wrongful, malicious and evil intent until about the month of December, 1941, when he notified her, as he had a right to do, that, by reason of her constant breach of the separation agreement, he would no longer be bound thereby, and would seek such other relief as the law might afford him; (2) that thereafter and as a result of negotiations between their respective counsel, "the parties agreed that the payments provided for in said separation agreement should be resumed and continued and that defendant should forego resort to any other legal remedy as he might have, but that plaintiff should not thereafter violate the terms of the said agreement" relating to molesting, etc., "and that in the event she should do so the defendant's obligation to forego resort to other remedies or to make further payments pursuant to the terms of said agreement should cease and terminate"; (3) that though defendant did resume payments under said agreement, and faithfully complied with all the terms and conditions thereof, plaintiff, in violation of her express promise and agreement, continued to harass, molest, disturb and slander defendant in manner set out in defendant's third further answer and defense and counterclaim.
And defendant for a third further answer and defense and by way of counterclaim avers: That "plaintiff wilfully, maliciously and with evil intent and purpose violated her express agreement that she would not molest, disturb or speak disparagingly of defendant" in manner specified in detail, particularly in May, and the summer of 1942, and "shortly after the remarriage of this defendant, in the month of March, 1943," by reason of which "he has been held up to the public as one who is guilty of a breach of trust and of some crime; and charged expressly or by inference with crimes which would subject him to infamous and *Page 193 
disgraceful punishment and imprisonment and would exclude him from decent and honorable society; that he has been humiliated, embarrassed and constantly placed in fear of his own life and safety; that the peace and tranquility of his home have been disturbed and injured; that his feelings have been outraged and damages; and that he has been caused to endure great mental torture and suffering all to his great damage in the sum of $10,000." Defendant thereupon prays that plaintiff take nothing by her action, and that he recover of her the sum of $10,000.
Plaintiff in reply to defendant's first and second answers and defenses denies each separate averment. Plaintiff moved to strike from defendant's answer all of the allegations contained in his third further answer and defense and counterclaim, together with prayer for relief for that same is bottomed in tort, whereas the plaintiff's cause of action is on contract, and therefore, the two causes of action as alleged in the complaint and in said further answers, defenses and counterclaim cannot be prosecuted in the same action, and the attempt to join same constitutes a misjoinder of causes of action.
When the case came on for hearing, motion to strike was treated as a demurrer for the purposes of hearing; and the plaintiff demurred ore tenus
to the first and second further answers and defenses set up by defendant, and moved for judgment pro confesso upon the allegations of the complaint.
The court, being of opinion that each of the said motions and demurrers should be overruled, entered judgment accordingly. Plaintiff excepted to each ruling and appeals to the Supreme Court and assigns error.
The questions involved on this appeal relate to the action of the court below (1) in overruling plaintiff's demurrer to the further answers and defenses and counterclaim of defendant, and (2) in denying plaintiff's motion for judgment pro confesso on the pleadings. As to these, we are of opinion that the challenge of plaintiff is well founded.
The plaintiff may in all cases demur to answer containing new matter, where, upon its face, it does not constitute a defense or counterclaim. Such demurrer shall be heard and determined as provided for demurrers to the complaint. G.S., 1-141.
"The office of demurrer is to test the sufficiency of a pleading, admitting, for the purpose, the truth of the allegations of the facts contained *Page 194 
therein, and ordinarily relevant inferences of fact, necessarily deducible therefrom are also admitted, but the principle does not extend to the admissions of conclusions or inferences of law." Stacy, C. J., in Ballingerv. Thomas, 195 N.C. 517, 142 S.E. 761; Toler v. French, 213 N.C. 360,196 S.E. 312; Vincent v. Powell, 215 N.C. 336, 1 S.E.2d 826;Merrell v. Stuart, 220 N.C. 326, 17 S.E.2d 458.
It must be noted at the outset that separation agreements between husband and wife have not always been recognized as valid in this State. For instance, in the case of Collins v. Collins, 62 N.C. 153, decided in 1867, in an opinion by Reade, J., the Court unequivocally held that "Articles of Separation between husband and wife, voluntarily entered into by them in contemplation of or after marriage, are against law and public policy, and will not be enforced in this State." This view, however, has been modified from time to time. See Sparks v. Sparks (1883), 94 N.C. 527;Smith v. King (1890), 107 N.C. 273, 12 S.E. 57; Cram v. Cram
(1894), 116 N.C. 288, 21 S.E. 197; Archbell v. Archbell (1912),158 N.C. 408, 74 S.E. 327, Ann. Cas., 1913 D, 261.
In the Archbell case, supra, while deciding, in opinion by Hoke, J., that the deed of separation there in question was void because of an invalid certificate of the examining officer, as required by statute, Revisal, 2107, later C. S., 2515, and now G.S., 52-12, the Court said: "Since that decision was rendered in 1867, our statutes upon `Marriage and Marriage Settlements and Contracts of Married Women' as entitled in the Code of 1883 and contained with amendments in Revisal, 1905, chapter 51, have made such distinct recognition of deeds of this character, more especially in Revisal, secs. 2116, 2108, 2107, etc., that we are constrained to hold that public policy with us is no longer peremptory on this question, and that under certain conditions these deeds are not void as a matter of law."
But we find in the decisions of this Court no collection of these "certain conditions." However, as stated in the Archbell case, supra, the authorities generally agree upon the requisites for a valid deed of separation. These are: (1) A separation must have already taken place, or is to immediately follow the execution of the deed. (2) The separation agreement must be made for an adequate reason, not for mere mutual volition or caprice, and under circumstances of such character as to render it reasonably necessary to the health or happiness of the parties. (3) The agreement of separation must be reasonable, just, and fair to the wife — having due regard to the condition and circumstances of the parties at the time it was made. And (4) in this State the separation agreement must conform to statutory requirements, where property rights are involved. G.S., 52-12. *Page 195 
The pertinent statute, G.S., 52-12, formerly C. S., 2515, Revisal, 2107, provides that no contract between a husband and wife made during coverture shall be valid to affect or change any part of the real estate, or to impair or change the body or capital of the personal estate of the wife, or the accruing income thereof, for a longer period than three years next ensuing the making of such contract, unless such contract is in writing, and is duly proved as is required for conveyances of land, and, upon privy examination of wife as in cases of execution of deeds, it shall appear to the satisfaction of the officer taking the examination that the wife freely executed such contract, and freely consented thereto at the time of her separate examination, and that the same is not unreasonable or injurious to her, and the certificate of the officer shall state his conclusions and shall be conclusive of the facts therein stated. But the same may be impeached for fraud as other judgments may be.
Moreover, it is provided by statute, G.S., 52-13, formerly Revisal, 2108, C. S., 2516, that . . . "Subject to G.S., 52-12, any married person may release and quitclaim dower, tenancy by the curtesy, and all other rights which they might respectively acquire or may have acquired by marriage in the property of each other; and such releases may be pleaded in bar of any action or proceeding for the recovery of the rights and estates so released."
Construing and applying these two sections in the Archbell case, supra, then Revisal, 2107 and 2108, the Court said: "Section 2108 in express terms subjects to requirements of 2107 contracts between husband and wife which purport to release or quitclaim dower, curtesy, and `all other rights which they might respectively acquire or may have acquired in the property of each other.'" Continuing, it is there said: "While we have held that an allowance by way of alimony may be predicated in some instances on the capacity of the husband to labor, Muse v. Muse, 84 N.C. 35, this right of a married woman to support and maintenance is primarily a property right, or may be and very usually is made very largely dependent on the amount of property owned by the husband. Taylor v. Taylor, 93 N.C. 418; Nelson on Divorce, sections 908-909. Our decisions are to the effect that the identity of person between husband and wife in reference to their right to contract with each other is not further relaxed or affected than is specified and required by the Constitution and statutes (Armstrong v. Best,112 N.C. 59; Sims v. Ray, 96 N.C. 87), and this section 2108 by correct interpretation clearly contemplates that a deed of the kind presented here, `surrendering dower and all personal and property rights which she may have acquired against the person and property of her husband,' shall only be upheld when it complies with the forms established and required in section 2107. On this ground, therefore, the ruling of the lower court holding that the *Page 196 
instrument is void and of no effect on the rights of the parties is affirmed."
In the light of these principles, we have this factual situation in the case in hand: 1. A written separation agreement, affecting the wife's right of dower and all other rights acquired by her by marriage in the property of her husband, including the property right of support (Archbell v.Archbell, supra), executed in compliance with the forms established and required by G.S., 52-12, formerly Revisal, 2107, C. S., 2515.
2. Defendant admitting the separation agreement as written, and seeking in first further defense to reform it on ground of omission by mutual mistake of parties and error of draftsman, without averring that the matter omitted was taken into consideration by the officer, who took the examination, in finding that the contract is "not unreasonable or injurious" to the wife.
3. Defendant admitting the separation agreement as written, and seeking in the second further defense to set up a supplemental agreement modifying the original separation agreement and affecting the wife's property right of support, while the relationship of husband and wife still existed between him and plaintiff, without averring that the supplemental agreement is in writing and executed in compliance with requirements of G.S., 52-12, formerly Revisal, 2107, C. S., 2515.
Therefore, applying the principle applied in the Archbell case, supra, if by mutual mistake of parties and error of draftsman material matter were omitted from the separation agreement as written and not considered by the examining officer in finding that the original agreement is "not unreasonable or injurious" to the wife, the agreement of the wife as reformed would be in contravention of the provisions of the statute, G.S.,52-12. Likewise, if the original separation agreement were modified by supplemental agreement affecting the wife's property right of support, the agreement as modified would be subject to the forms and requirements of G. S., 52-12. Hence, in the absence of averments as above indicated both the first and second further defenses and answers are fatally deficient.
Regarding the third further answer and defense and counterclaim: Plaintiff sues to recover monetary consideration under written contract, a separation agreement. The alleged counterclaim of defendant sounds in tort based on alleged defamatory language, for which plaintiff, if liable at all, would be liable by operation of law, and not by reason of the deed of separation on which she sues. In such case the tort action for slander is not "a cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action," within the purview of the statute relating to counterclaim. G.S., 1-137. Hence, it may not be *Page 197 
pleaded as a counterclaim in the present action. See Weiner v. Style Shop,210 N.C. 705, 188 S.E. 331; Ins. Co. v. Smathers, 211 N.C. 373,190 S.E. 484; Hoyle v. Carter, 215 N.C. 90, 1 S.E.2d 93; Finance Corp.v. Lane, 221 N.C. 189, 19 S.E.2d 849.
Lastly we come to plaintiff's exception to denial of her motion for judgment on the pleadings. The practice in such cases is very restricted and is confined to cases where a plea confesses the cause of action and the matter relied upon in avoidance is insufficient in law. McIntosh P. P., 680. Moye v. Petway, 76 N.C. 327; Ward v. Phillips, 89 N.C. 217; Walkerv. Scott, 106 N.C. 56, 11 S.E. 364; Harrison v. Ray, 108 N.C. 215,12 S.E. 993; Shives v. Cotton Mills, 151 N.C. 290, 66 S.E. 141; Baxterv. Irvin, 158 N.C. 277, 73 S.E. 882.
Applying this principle to the present case, the defendant admits the separation agreement, copy of which is attached to the complaint, and defends his failure to pay in accordance with the terms of the agreement upon the ground that plaintiff, by violating her covenant against molestation of defendant, has forfeited her right to enforce defendant's covenant to pay for rights surrendered to him. Therefore, this determinative question arises: If it be true that the wife has violated the expressed covenant against molestation, as set out in the separation agreement, has she thereby forfeited her right to enforce the covenant of her husband to pay to her sums of money in lieu of support owed to her by him, as a matter of law, and for relinquishing to him her right of dower, and all other rights in his property acquired by her by marriage, as described in the separation agreement? While it does not appear that this question has been considered by this Court, mere statement of it suggests a negative answer. That the agreement of separation must be reasonable, just and fair to the wife — having due regard to the condition and circumstances of the parties at the time it was made as stated hereinabove, is a requisite condition to a valid agreement. And the authorities in other states which have considered the subject generally hold that the breach by the wife of the covenant against molestation of husband is no defense to an action by the wife to enforce the husband to make payments for her support and for release of dower and rights in his property acquired by her by marriage to him, in accordance with the terms of the separation agreement entered into by them. Thomas v. Thomas (N. J.), 146 A. 431; Sabbarese v.Sabbarese, 104 N.J. Eq., 600, 146 A. 592; Stern v. Stern (N. J.),163 A. 149; Hughes v. Burke (Md.), 167 Md. 472, 175 A. 335; FifthAve. Bank of N.Y. v. Realty Co., 30 F.2d 993; 30 C. J., 1065; 17 C. J. S., 620, Contracts, 235 (b); Lindey on Separation Agreements, 81.
These authorities are to the effect (1) that it is not every violation of the terms of a separation agreement by one spouse that will exonerate the *Page 198 
other from performance; (2) that in order that a breach by one spouse of his or her covenants may relieve the other from liability from the latter's covenants, the respective covenants must be interdependent rather than independent; and (3) that the breach must be of a substantial nature, must not be caused by the fault of the complaining party, and must have been committed in bad faith. 30 C. J., 1065. H. W., 845.
It is held by the Maryland Court in Hughes v. Burke, supra, "that the agreement not to molest him (the husband), while a part of the consideration for his covenants, was incidental and not the moving cause. All that he agreed to do in the way of support was in the performance of his common law duty." And in the Sabbarese case, supra, the Chancery Court of New Jersey expresses this view: "The breach of the covenant against molestation is no defense to a suit to enforce payment under the agreement. The covenants are independent, and in legal contemplation the promise of pay is in substitution of the legal duty to support." Other authorities and text writers hold to similar views. In 17 C. J. S., 620, the author states that "provisions that the parties will not molest each other . . . do not invalidate the separation agreement, since they merely affirm legal rights already existing," citing authorities.
In the case in hand, the covenant to pay is not conditioned upon the covenant against molestation. The two are of distinctive character and neither is dependent upon the other. Hence, in the light of the authorities cited, with which we agree, it is held that, on the record as it appeared in the trial court, and now appears, plaintiff was, and is entitled to have the court render judgment on the pleadings in her favor.
Reversed.