586 A.2d 1284

**Joy R. BREES**

v.

**Linda CRAMER, Personal Representative of the Estate of Earl Roland Brees.**

**No. 149, Sept. Term, 1989.**

Court of Appeals of Maryland.

March 12, 1991.

Tracy E. Mulligan, Rockville, on brief, for appellant.

Christopher F. Davis, Hearne & Bailey, P.A., Salisbury, on brief, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE,* RODOWSKY, McAULIFFE, ADKINS * and CHASANOW, JJ.

RODOWSKY, Judge.

This case involves whether certain covenants in a separation agreement are interdependent. The circuit court held that the wife would not be excused from her waiver of any interest in, and of the right to administer, the deceased husband's estate, even if the husband had breached his covenant to continue the wife as beneficiary on a certain insurance policy. As explained below, we shall affirm.

Appellant, Joy R. Brees (Joy), and Earl Roland Brees (Earl) were married in 1967. Earl had three children by a prior marriage, including the appellee, Linda Cramer (Cramer). One child, Michael Brees, was born in April 1970 of the marriage of Earl and Joy. In July 1982 the couple voluntarily separated, and in September 1983 Earl and Joy completed execution of a written separation agreement (the Agreement).

---

* Cole, J., and Adkins, J., now retired, participated in the hearing and conference of this case while active members of this Court but did not participate in the decision and adoption of this opinion.

The Agreement included provisions relating to the following:

—no further cohabitation between the parties (¶ 1);

—custody of Michael to Earl (¶ 2);

—use, rental and sale of the family home in Adelphi, Maryland, and disposition of the proceeds (¶¶ 3 and 4);

—mutual waivers of alimony and maintenance (¶ 5);

—mutual waivers of claims to child support (¶ 6);

—income tax use of the personal exemption for Michael and of interest and real estate tax deductions generated by the family home (¶¶ 7 and 8);

—medical insurance for Michael at Earl's expense (¶ 9);

—mutual forbearances to pledge the other party's credit (¶ 13);

—assumption by Earl of responsibility for the balance of a bank loan and on a retail credit account (¶ 14a);

—division of furniture, other personalty, and cemetery plots (¶ 14b);

—transfer by Earl to Joy of a lot in Virginia and of an automobile (¶ 14c and d);

—mutual releases of obligations for alimony, support and maintenance (¶ 15);

—mutual releases from all "rights, claims, demands or obligations arising out of or by virtue of the marital relation of the parties, including . . . right of election regarding the estate of the other, or to take against the Will of the other, [and the] right to act as executor or administrator of the estate of the other" (¶ 17);  and

—promises by each party to insure that party's life for not less than $83,000 (the amount of the debt secured by the family home) with policy proceeds payable to the other party until sale of the family home, and then, optionally, to Michael (¶¶ 10 and 11).

Included among the life insurance covenants were Earl's promise "to leave the Wife as the beneficiary of at least

$34,000.00 in Federal Employees Government Life Insurance" and Joy's promise to "leave the Husband as the beneficiary of at least $25,000.00 in Federal Employees Government Life Insurance...." [1]

The Agreement contains an integration clause. It further provides that "[i]f any provision of this Agreement is held to be void or unenforceable, all the other provisions shall nevertheless continue in full force and effect."

Earl and Joy were never divorced. Earl moved to Ocean City, Maryland where he died, intestate, in June 1987. Michael lived with his father until Earl's death and, thereafter, with Cramer. In August 1987 Joy learned that Earl, by a designation executed in February 1984, had changed the beneficiary from her to Michael on the policy with Federal Employees Group Life Insurance on which $44,000 in death benefits were payable.

Joy petitioned for probate of Earl's estate and was appointed personal representative under letters issued by the

---

**1.** Paragraphs 10 and 11 of the Agreement provide in full:

"10. The Husband agrees to seek and pay for life insurance which will provide for the payment of the balance of the first trust and the balance of the second trust—an amount not less than $83,000.00—said insurance to be made payable to the Wife—and to leave the Wife as the beneficiary of at least $34,000.00 in Federal Employees Government Life Insurance, plus at least $17,000.00 of insurance to be made payable to the minor child, MICHAEL GEOFFREY BREES. Upon the sale of the family home, the parties agree that the Husband has the right to change the beneficiary of the $83,000.00 insurance policy and to combine it with at least $17,000.00 of insurance to make the sum of not less than $100,000 in life insurance payable to the minor child.

"11. The Wife agrees to seek and pay for life insurance which will provide for the payment of the balance of the first trust and the balance of the second trust—an amount not less than $83,000.00—said insurance to be made payable to the Husband—and leave the Husband as the beneficiary of at least $25,000.00 in Federal Employees Government Life Insurance, plus $17,000.00 of insurance to be made payable to the minor child, MICHAEL GEOFFREY BREES. Upon the sale of the family home, the parties agree that the Wife has the right to change the beneficiary of the $83,000.00 insurance policy and to combine it with at least $17,000.00 of insurance to make the sum of not less than $100,000 in life insurance payable to the minor child."

Register of Wills for Worcester County. Thereafter Cramer, and the other children of Earl, petitioned the Orphans' Court for Worcester County to remove Joy as personal representative. That court did so and appointed Cramer. Joy appealed to the Circuit Court for Worcester County pursuant to Maryland Code (1974, 1989 Repl.Vol.), § 12–502 of the Courts and Judicial Proceedings Article (CJ) which provides for a de novo appeal.[2]

The circuit court, after conducting an evidentiary hearing, affirmed with a written opinion. The court noted that there was no allegation that the Agreement had been obtained by fraud, misrepresentation or illegality, that Joy had been represented by counsel in the negotiations, and that she admitted executing the Agreement against the advice of counsel. Based on its review of the Agreement the court concluded:

"In summary this Agreement is one that has been already substantially performed by both parties. Mr. Brees' failure to keep in force the Thirty–Four Thousand [Dollar] ($34,000.00) policy at issue is, if anything, a partial failure of consideration not resulting in the nullification of the Agreement. If any remedy is warranted, the Respondent, Mrs. Brees, must seek that relief in an action for breach (if such an action is maintainable)."

Joy appealed to the Court of Special Appeals. We issued the writ of certiorari on our own motion prior to consideration of the case by the intermediate appellate court.

In her brief Joy frankly admits that this appeal involves not only her right to administer Earl's estate but also, "indirectly[,] the right to share in the estate" of the intestate decedent. Brief of Appellant at 1.

---

**2.** The de novo appeal is an alternative to direct appeal to the Court of Special Appeals under CJ § 12–501. A party choosing de novo appeal retains the right to appeal to the Court of Special Appeals under § 12–301. *See Rome v. Lowenthal,* 290 Md. 33, 428 A.2d 75 (1981). *See also* Revisor's notes to Md.Code (1974), CJ § 12–302.

Joy's position is that her relinquishment of any interest in, and of the right to administer, Earl's estate was conditioned on Earl's performance of his promise to "leave" Joy as beneficiary of at least $34,000 of life insurance. Joy does not press a contention that the Agreement by its terms, either in its direct language or by proper interpretation, creates an express or true condition precedent to her performance. Compare J. Calamari & J. Perillo, *The Law of Contracts* §§ 11–6 and 11–7 (2d ed. 1977) (describing and illustrating express conditions). The substance of Joy's argument is that her waivers remained subject to a constructive condition, implied in or imposed by law, that Earl would substantially perform his promise concerning insurance. Failure of this constructive condition "confers rights on the aggrieved party not to perform unexecuted, mutually dependent provisions of the Agreement, and imposes liabilities on the defaulting party." Appellant's Reply Brief at 6.

Restatement (Second) of Contracts § 237 (1981) expresses the same concept in this fashion: "[I]t is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time."

■ Joy's waivers with respect to Earl's probate estate and Earl's promise concerning insurance for Joy's benefit are not apportioned equivalents under the Agreement. Joy argues that the interdependency of the provisions is supported by her testimony that she would not have signed the Agreement were it not for the promise of life insurance for her benefit. But the trial court was not obliged to accept that conclusion, and it did not do so. The circuit court observed in *dicta* that Joy's promise to insure her life for Earl's benefit might have been dependent on Earl's promise to insure his life for Joy's benefit.

In any event, we do not construe the Agreement to make Joy's waivers of rights in Earl's probate estate dependent

on the performance of Earl's promise to insure for Joy's benefit. A number of reasons support this conclusion.

■ First, breach of a covenant in a prenuptial or separation agreement does not, *ipso facto,* excuse performance of another covenant by the other party. *See Schnepfe v. Schnepfe,* 124 Md. 330, 92 A. 891 (1914) (wife's breach of prenuptial agreement, by deserting husband, does not relieve husband's estate of liability under husband's promise to bequeath a specific sum of money to wife). And *see* D. Thomas, *Maryland Divorce and Separation Law,* at 4–25 (MICPEL 4th ed. 1987) ("Where one breaches a provision in a marital settlement agreement which is not dependent upon other provisions, enforcement of the other provisions is unaffected"). Thus, a clearer expression of the intent of the parties than appears in this instrument is required before concluding that the parties to the Agreement intended the waiver of rights in Earl's probate estate to be dependent on insurance for Joy's benefit.

Reinforcing this conclusion is the express severability provision quoted above. Joy argues that the severability clause applies only if a provision "is held to be void or unenforceable," an event which has not occurred here. Dependency of Joy's waiver on the performance of Earl's promise to insure is inconsistent with the provision that, in effect, Joy's waiver would be operative despite the invalidity or unenforceability of Earl's promise.

■ Significant here is Md.Code (1974), § 3–205 of the Estates and Trusts Article. Section 3–205 reads:

"The right of election of a surviving spouse may be waived before or after marriage by a written contract, agreement, or waiver signed by the party waiving the right of election. Unless it provides to the contrary, a waiver of 'all rights' in the property or estate of a present or prospective spouse, or a complete property settlement entered into after or in anticipation of separation or divorce, is a waiver of any right to his family allowance as well as to his elective share by each spouse in the

property of the spouse, his right to letters under § 5–104, and is an irrevocable renunciation of any benefit which would pass to him from the other by intestate succession, by statutory share, or by virtue of the provisions of a will executed before the waiver or property settlement."

This statute contemplates that the waiver of the right to letters and to intestate succession is effective when made and, indeed, is declared to be "an irrevocable renunciation." Paragraph 17 of the Agreement is couched in similar terms ("each party hereby releases and forever discharges the other"). On that reading of the Agreement and of § 3–205, there is no unexecuted performance on Joy's part with respect to administration and a share in intestacy. Joy's covenant was not to forbear exercising the right to letters and to share in intestacy; rather, it was a waiver effective when made.

More important is the effect of public policy on whether to construe covenants as interdependent. Where the welfare of children would be adversely affected if specific covenants in a separation agreement were held to be interdependent, we have refused so to construe the agreement. *See Stancill v. Stancill,* 286 Md. 530, 408 A.2d 1030 (1979) (obligation to pay non-modifiable wife maintenance not excused by wife's refusal to honor child visitation arrangements); *Seltzer v. Seltzer,* 251 Md. 44, 246 A.2d 264 (1968) (per curiam) (obligation to pay child support not excused by custodial parent's refusal to honor visitation arrangements); *Frank v. Frank,* 203 Md. 361, 101 A.2d 224 (1953), *on appeal after remand,* 207 Md. 124, 113 A.2d 411 (1955) (wife's waiver of alimony not dependent on husband's performance of promise to pay child's medical expenses); *Hughes v. Burke,* 167 Md. 472, 175 A. 335 (1934) (wife's breach of covenant not to molest husband does not excuse husband's obligation to pay spousal and child support).

Here, underlying § 3–205 as a matter of policy is the need to rely on the text of waivers in prenuptial and separation agreements in order to promote the efficient and reasonably swift administration of decedents' estates. Thus, we need

not in the instant matter delineate the full reach of the words "irrevocable renunciation," as used in § 3–205. The legislative policy underlying that statute would be violated were we to imply in law a constructive condition which made the continued validity of Joy's waiver specifically dependent on Earl's performance of the promise to insure. Hence we do not impose the constructive condition that Joy seeks.

The absence of interdependency between the covenants to insure and the waiver means that the materiality of the assumed breach by Earl must be measured against the whole of his promises in the Agreement.

■■■ The circuit court found nineteen considerations given by Earl, excluding that pertaining to the $34,000 life insurance benefits. Among these are Earl's fulfilled promises to live apart from Joy and to act as sole custodian of Michael. Aspects of these performances are not quantifiable in monetary terms. Clearly they are not insignificant performances in the couple's "Agreement for Settlement of Marriage, Custody of Child, and Property." Moreover, it was uncontested that Earl performed his obligation to name Michael as the beneficiary of at least $17,000 of life insurance. In fact he provided even more than the additional $83,000 benefits to Michael included as an option in the Agreement. This is also consideration moving to Joy. *See McClellan v. McClellan,* 52 Md.App. 525, 534–35, 451 A.2d 334, 340 (1982), *cert. denied,* 295 Md. 283, *cert. denied,* 462 U.S. 1135, 103 S.Ct. 3119, 77 L.Ed.2d 1372 (1983). On the other hand, breach of a covenant to maintain life insurance in a specific amount of money ordinarily can be remedied by a money judgment. It is not necessary, in order to give Joy adequate relief from the assumed breach, to strike down waivers valid when made. Thus, the circuit court did not err in finding that the nature of Earl's assumed breach, weighed against Earl's performance of other agreed considerations, did not produce a material breach of a constructive condition of substantial performance of the Agreement as a whole.

Joy contends that the circuit court did not make the required determination of materiality because it viewed materiality as bearing on rescission of the contract. The circuit court concluded that the violation, if any, of the covenant to insure was only a partial, and not a total, "failure of consideration." The terminology "failure of consideration" describes the same legal doctrine which more currently is described as the constructive condition of substantial performance. *See* 3A A. Corbin, *Corbin on Contracts* § 658 (1960); 6 S. Williston, *Law of Contracts* § 814 (Jaeger 3d ed. 1962); Restatement (Second) of Contracts § 237, comment *a* (1981). Accordingly, the trial court applied the operative legal principle in its decision, and it applied that principle correctly to the facts of this case.

JUDGMENT OF THE CIRCUIT COURT FOR WORCESTER COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.