## FRANK *v.* FRANK
[No. 16, October Term, 1953.]

*Decided December 9, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Eugene Hettleman* for appellant.

No appearance or brief for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a decree dismissing the petition of appellant, Zelma Frank, for alimony.

On May 14, 1950, the appellant filed a bill for permanent alimony, alimony *pendente lite* and counsel fee against her husband, Eliot Frank, the appellee here. On August 31, 1950, the appellant and her husband entered into an agreement which provided substantially as follows: "Whereas, the said Zelma Frank filed a Bill of Complaint for a divorce *a mensa et thoro* against Eliot Frank in the Circuit Court of Baltimore City; and whereas, conditioned upon the said Zelma Frank obtaining a divorce *a mensa et thoro*, the parties desire to settle amicably between them their respective property rights"; Eliot Frank agreed to release and waive to Zelma Frank, her heirs and assigns, all his right and claim to any real or personal property which Zelma Frank possessed or might hereafter possess and his dower interest and any rights in her estate. He also agreed to execute any papers to carry out such releases. Zelma Frank agreed for herself, her heirs and assigns, to release and waive "all her right, title or claim to support, maintenance or alimony now and at any time in the future", as well as all her rights to her husband's property then possessed by him or hereafter possessed by him. She also agreed to execute any papers to accomplish such releases. The agreement further provided: "(5) Neither of the parties hereby waives or condones any cause for divorce now or hereafter existing against the other; and said Zelma Frank hereby covenants that she will not, in any proceeding taken by her at this time or at any time hereafter assert or make any claim for alimony or support for herself, and she does hereby release Eliot Frank of all right of support or alimony. (6) And the said Eliot Frank agrees, subject to the approval and further order of the court, to pay the sum of Forty ($40.00) Dollars per week to the said Zelma Frank for the support and

maintenance of the infant children of the parties hereto."

On October 16, 1951, the appellant filed an amended bill of complaint against her husband charging him with abandonment, desertion and adultery; that she was unable to support herself and her minor children while her husband earned approximately $100.00 per week. She asked for a divorce *a mensa et thoro,* alimony *pendente lite,* permanent alimony and costs of suit. On October 18, 1951, a cross bill of complaint was filed by Eliot Frank against the appellant charging her with desertion and asking for a divorce *a mensa et thoro.* On October 23, 1951, the appellant filed an answer denying the allegations of the cross bill of complaint.

After other proceedings which are not material here, a hearing was held in open court and on May 13, 1952, a decree was passed by the then Chancellor, John T. Tucker, granting the appellant, Zelma Frank, a divorce *a mensa et thoro.* This decree also contained the following: "And it is further ordered that the Stipulation and Agreement dated August 31, 1950, between the parties hereto, and filed herein, be and the same is hereby ratified and approved, and made a part of this decree except for Paragraph No. 6 thereof, which is hereby amended. And it is further ordered that in lieu of said paragraph No. 6, that the defendant Eliot Frank shall pay all medical expenses incurred and to be incurred because of the present illness of the minor child, Stanley D. Frank, and meanwhile shall pay to the plaintiff, Zelma Frank, the sum of sixteen dollars per week for the support of the minor child, Frederick W. Frank, all subject to the further order of the Court. And it is further ordered that the defendant, Eliot Frank, shall pay to Eugene Hettleman, the plaintiff's solicitor, a counsel fee of five hundred dollars and shall further pay the costs of these proceedings." At the bottom of this order, signed by Chancellor Tucker, is the following: "I assent to the passage of this decree. Morton H. Perry, Atty. for Def."

On May 24, 1952, the appellant filed in the case the following petition: "1. That your Petitioner instituted the above suit for an allowance of permanent alimony and thereafter amended it to include a divorce *a mensa.* 2. That in defense of the claim for alimony the defendant introduced a certain stipulation and agreement, whereby conditioned upon the said Zelma Frank obtaining a divorce *a mensa,* she waived alimony. 3. That before a decree was signed, and while the validity and effect of this agreement were being contested, the parties agreed that said agreement be adopted as part of the decree, provided Paragraph No. 6 thereof were amended to reflect the new agreement of the parties. 4. That on May 13, 1952, this Honorable Court passed its decree, whereby said stipulation and agreement were ratified, approved and incorporated as part of the decree, except Paragraph No. 6 which was amended to provide as the new agreement of the parties: '* * * that the defendant Eliot Frank shall pay all medical expenses incurred and to be incurred because of the present illness of the minor child, Stanley D. Frank, and * * *'. 5. The said minor child had been previously and at this time still is confined to Phipps Clinic due to a mental disorder caused by the conduct of the defendant in deserting his wife and children. 6. That the defendant has failed and refused to pay the medical expenses which he agreed to pay, and the petitioner has been forced to pay the same to preserve the health of her child. 7. That having therefore breached said agreement as amended, the defendant is no longer entitled to the benefits thereof, and your Petitioner is therefore entitled to be awarded alimony, both temporary and permanent. 8. That the depositions previously taken in this case show that the defendant was earning from January to August of 1951, $175.00 per week, and your Petitioner believes and therefore avers that he is still earning the same amount." She asked for permanent alimony, alimony *pendente lite* and counsel fee.

After an answer was filed to the petition and after testimony was taken on September 17, 1952, before Chancellor W. Conwell Smith, he, on March 6, 1953, filed a decree "that said Petition for alimony be and the same is hereby denied, without prejudice to the right of the Complainant to file an amended Petition claiming increased support for the children of the parties, and it is further ordered that costs herein shall be paid by the defendant." From that decree appellant appeals here.

At the hearing held before Chancellor Smith on September 17, 1952, the record from Johns Hopkins Hospital, Phipps Psychiatric Clinic, was admitted in evidence showing that Stanley Frank was admitted there on February 1, 1952, discharged April 11, 1952, readmitted on April 14, 1952, and finally discharged on June 2, 1952. A letter was admitted in evidence from Eliot Frank to Dr. Doris M. Berlin, dated March 27, 1952, in which Mr. Frank notified the hospital that he could not pay them any more money and asked that the child be sent to a State hospital. Dr. Berlin, on April 1, 1952, wrote a letter to the appellant advising her that her husband would not pay any more hospital expenses for Stanley, stating that the sudden transfer to a State hospital might produce a disturbance, and suggesting that appellant discuss the situation with her. It was admitted that the hospital bills totaled $1,585.00, of which amount Eliot Frank paid $747.60 and the balance of $837.40 was paid by the appellant. Mrs. Frank said she borrowed the money to pay this balance. After March 20, 1952, when the appellee went to Florida, he resumed the payment of $16.00 per week to appellant for Stanley. Crediting this $16.00 per week paid by the appellee from March 20, 1952, until Stanley was finally discharged on June 2, 1952, it was agreed that the amount owing by the appellee on the hospital bills was $655.65. Evidence was offered that from January 1, 1951, to August 23, 1951, the appellee was earning approximately $170.00 per week. During the time Stan-

ley was in the hospital the appellee sent $16.00 per week to the appellant for the support of the other child, Frederick W. Frank. After March 20, 1952, he paid the appellant $32.00 per week for the support of the two children. The appellant testified that the appellee was a partner in a Baltimore firm which manufactured cartons. The appellant stated that the appellee had gone to Florida for the purpose of obtaining a divorce where he had lived for "close to six months". On cross examination she said she had filed an answer to the husband's suit in Florida; had submitted to the jurisdiction of the Florida court; and had filed a petition for alimony in Florida but at the time of the hearing in this case, there had been no final ruling by the Florida courts in that case. Appellant's counsel advised us, during the argument in this Court, that the appellee has, since the hearing below, been denied a divorce in Florida.

Chancellor Smith, in dismissing the petition for alimony, stated: "Now, then, if you will file a new petition and cite his failure to comply with the terms and requesting that the decree be modified, requiring him to pay $40 a week for the support of the two children, that is, $20 a week for each of the children, I will be prepared to sign such order. * * * Frankly, I feel the way it should be done is for you to file a fresh petition, prepare a fresh petition, send it to Mr. Perry, let Mr. Perry send it to his client, and simply tell him he is not going to oppose it unless he hears from him. Then you have more hope of getting the money after the order is signed, because the man in Florida will probably communicate with the business and inform them of the prospective modification of the order, and maybe they will send the check. I will dismiss the claim for alimony, and that disposes of that. Do you want a money decree for this balance? Suppose you talk it over with your client. If you want to modify the decree, you can embrace that in your petition. I think the order referring the case to the State's Attorney's office ought to be rescinded. You can both assent to that."

The appellant contends that she is not bound by her waiver of alimony because of the husband's partial breach of his agreement to pay the medical expenses of the child, citing *Barclay v. Barclay,* 98 Md. 366 and *Walker v. Walker,* 125 Md. 649. Before reaching that question, however, it seems pertinent to inquire whether the agreement would have been a bar if fully performed. It may be noted that the record is far from complete and there was no brief or appearance for the appellee in this court.

In *Cronin v. Hebditch,* 195 Md. 607, we held that a separation agreement should be set aside after the husband's death, in a proceeding against his estate. The agreement was between a wealthy husband and a penniless infant wife, made without disclosure of the husband's resources and in apparent fraud of her marital rights and unfair in the light of the confidential relation. It called for the payment of yearly sums and the mutual release of all property rights. It was not followed by a divorce, although conditioned upon the obtaining of one by the wife, and to this extent was merely executory. Judge Markell, speaking for the court, said (p. 618) that the agreement "shows on its face that it is without consideration and is unjust and inequitable. Perhaps, if the agreement were not also unlawful on its face, injustice and inequality between the parties might be avoided, without doing violence to the words of the agreement, by construing the whole agreement as 'conditioned upon a decree for divorce' and therefore ineffective. The entire agreement, however, is a palpably unlawful agreement to obtain a divorce and to pay $9,000 for it, $1,000 c.o.d., the balance in ten annual deferred payments. The agreement mentions no ground for divorce and seems to imply that none exists and that the divorce bargained for is therefore to be a fraudulent divorce."

In the instant case the agreement did not waive or condone any existing causes for divorce nor was it a bargain for a fraudulent one. There was a pending

action by the wife which was duly pressed to trial and which the court found to be well merited. We cannot find that the agreement was unlawful as against public policy simply because it was conditioned upon a divorce. See 1951 Code, Article 16, Section 37. The condition was met by the divorce decree and the agreement then became effective according to its terms. But we think it was still open to attack on the ground that it was without consideration, unjust or inequitable under the circumstances.

We find nothing in the record to show that the original agreement was made for an adequate consideration. The original bill was for alimony and the amended bill for divorce *a mensa* alleged that the wife was "poor and destitute and heavily in debt." There is no showing that the wife had any property of her own to support herself and her two minor sons. Thus it may be true that the only real consideration moving to the wife in exchange for her promise to release all claims against the property of the husband and for alimony, was the husband's promise to pay $40 a week for the support of his minor children, and this was subject to further order of court. His promise to do what he was already bound to do was simply nugatory.

However, the agreement was modified to provide that the husband should pay all medical expenses incurred or to be incurred because of the mental illness of one child and $16 a week for support of the other, all subject to further order of court. As modified the agreement was incorporated in the decree, which was assented to by the parties. It is quite clear that the order to pay medical expenses was beyond the court's authority, in the absence of agreement. See *Kriedo v. Kriedo,* 159 Md. 229; *Cf. Dougherty v. Dougherty,* 187 Md. 21; *Gunter v. Gunter,* 187 Md. 228; *Hull v. Hull,* 201 Md. 225, 93 A. 2d 536. The husband's liability, to pay for necessaries furnished his minor child, is to the supplier in an action at law, and not enforceable by application of the wife to the divorce court. *Kriedo v. Kriedo, supra.*

We think the incorporation of this paragraph in the decree did not close the door to inquiry into the validity of the agreement on which the decree was based.

We find nothing to the contrary in *Emerson v. Emerson*, 120 Md. 584. There it was held, by a divided court, that where a decree incorporated an agreement by the husband to pay, in lieu of alimony, more than the court could have allowed, the decree would not be set aside. It was recognized that in the absence of an agreement an alimony award is subject to change by the court upon a showing of change in circumstances. *Cf. Clarke v. Clarke*, 149 Md. 590, *Dickey v. Dickey*, 154 Md. 675, and *Winkel v. Winkel*, 176 Md. 167. But it was not intimated that the mere incorporation in the decree would foreclose an attack on the agreement for lack of consideration.

There may be special circumstances in the instant case that would render it unjust and inequitable for this court to hold that the wife is barred of her claim for alimony by the agreement. The facts suggest that the wife was, in effect, sacrificing her future support for the immediate welfare of her mentally ill child. If it be argued that the husband was not legally bound to pay all medical expenses incurred or to be incurred for the child's benefit, and this was a valuable consideration for her waiver of alimony, it is still true that he was bound to pay all reasonable and proper expenses and that the consideration in any event did not directly benefit or move towards the wife. Moreover, where agreements between husband and wife are not fully performed, the courts are not disposed to allow the agreement to be set up as a defense to an action for support. See cases in a note 10 A. L. R. 2d 466, 536 *et. seq*. Cf. *Walker v. Walker, supra*. On the other hand, there are cases involving separation agreements in which the Courts have held that certain covenants are independent one of the other, so that a breach of one will not necessarily amount to a rescission of the whole contract. *Hughes v. Burke*,

167 Md. 472, is such a case. See also *Fifth Ave. Bank of N. Y. v. Hammond Realty Co.*, 130 F. 2d 993, 995.

We are of opinion that justice requires the cause be remanded for the taking of further testimony particularly on the questions of the wife's means of support and her husband's ability to support her (*Dougherty v. Dougherty*, 187 Md. 21, 33) ; and whether there was any reasonable possibility of the wife's acquiring an estate which would make the relinquishment by each of all rights in the other's property a real consideration. All this would bring into clear focus the place, as dependent or independent, of the covenant to pay the hospital bills in relation to the waiver of alimony. There is also to be considered on remand the status of the divorce proceedings in Florida, the appellant having testified that she had submitted to that jurisdiction. Cf. *Johnson v. Johnson*, 199 Md. 329, 86 A. 2d 520, and *Johnson v. Johnson*, 202 Md. 547, 97 A. 2d 330. If the testimony shows that the wife is without means of support and her husband is able to support her; that there was no real consideration for the agreement; and that the husband's bill of divorce in Florida was dismissed, the chancellor should allow alimony to be awarded according to the circumstances of the parties.

> *Cause remanded without affirmance or reversal under Code, 1951, Article 5, section 42. Costs to be paid by the appellee.*